SOUTHWESTERN PORTLAND CEMENT
CO. v. MORENO.   (No. 506.)*

(Court of Civil Appeals of Texas. El Paso.
Dec. 16, 1915.   Rehearing Denied
Jan. 6, 1916.)

1. MASTER AND SERVANT ⬤⟿278—SUFFICIEN-CY OF EVIDENCE—SAFE PLACE TO WORK.

Evidence in a servant's action for injury from an explosion in the master's cement plant *held* to support a finding of negligence in failing to furnish a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ⬤⟿278.]

2. TRIAL ⬤⟿260—REQUESTED INSTRUCTIONS—GIVEN INSTRUCTIONS.

In a servant's action for injury, the refusal of defendant's charges that negligence must be proven and cannot be assumed, and that the plaintiff must prove the specific acts of negligence alleged before he can recover, was not error, where the court charged affirmatively that the jury must believe from a preponderance of the evidence that the explosion which injured plaintiff was caused as charged in the petition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ⬤⟿260.]

3. TRIAL ⬤⟿191—INSTRUCTION—ASSUMPTION OF FACTS.

In a servant's action for injury from an explosion in defendant's cement plant, alleging negligence in not furnishing a safe place to work, in that defendant allowed explosive coal dust, etc., to accumulate, an instruction on the assumption of risk that, if the jury found that the accumulation of coal dust, causing the explosion, was an ordinary incident of the work, and if the defendant exercised ordinary care to avoid its accumulation, plaintiff could not recover, but that, if

there were practical means of preventing its accumulation in quantities to cause an explosion which defendant fails to use, the plaintiff did not assume the risk, was not objectionable as assuming the accumulation of coal dust as alleged.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. ⬤⟿191.]

4. MASTER AND SERVANT ⬤⟿293—INSTRUCTION—SAFE PLACE TO WORK.

Such instruction was not objectionable as imposing upon defendant a greater burden than was required by law with regard to what it should have done to provide a safe place for work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. ⬤⟿293.]

5. EVIDENCE ⬤⟿481 — OPINION EVIDENCE — SAFE PLACE TO WORK—SIMILARITY OF CONDITIONS.

In a servant's action for injury from defendant's failure to furnish a safe place to work, in that it allowed explosive coal dust, etc., to accumulate, opinion of a chemical engineer that the conditions of grinding coal, found when he examined defendant's plant, did not render it safe, and as to means which might have been discovered to be practicable and useful in removing the danger of ignition, and that the pulverizer was the initial source of danger, was admissible, where the conditions at the time of his inspection were the same as at the time of the accident.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2248–2254; Dec. Dig. ⬤⟿481.]

6. EVIDENCE ⬤⟿481 — OPINION EVIDENCE — SAFE PLACE TO WORK.

In such action where the engineer had testified as to how close a pulverizing machine was to the fire in the drying furnace, which nearness was the initial source of danger, his answer to a question as to different means discovered to render such place safe for work, following his testimony as to conditions rendering the place unsafe, and his testimony that if forced ventilation to draw off the air and dust, etc., had been used, it would have made it safer without isolating the pulverizer, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2248–2254; Dec. Dig. ⬤⟿481.]

Appeal from District Court, El Paso County; W. D. Howe, Special Judge.

Action by Juan Antonio Moreno against the Southwestern Portland Cement Company. Judgment for plaintiff, and defendant appeals. Affirmed.

S. P. Weisiger, of El Paso, for appellant. F. G. Morris and S. B. Gillett, both of El Paso, for appellee.

HARPER, C. J.   J. A. Moreno brought this suit against the Southwestern Portland Cement Company for damages for personal injuries suffered by him by reason of the negligence of the defendant company in failing to furnish him a safe place to work, under the following allegations: That defendant is a private corporation, and had more than five persons in its employ at the same time; that plaintiff was an employé of defendant company; that while engaged in the discharge of his duties, there was an explosion in the cement plant of the defendant, caused by the accumulation of coal dust in the kiln-

room, etc., or place where plaintiff was put to work; that plaintiff's injuries were caused by the negligence of the defendant, its agents, employés, etc., due to the want of ordinary care, either in the failure to inspect the operation and ventilation of the place where plaintiff was put to work, or in the failure to ventilate said place, thereby allowing explosive gas, coal dust, etc., to be and accumulate. Further alleged that plaintiff does not know the cause of said explosion; cannot state the cause thereof with more particularity; that same may have been occasioned from some other cause unknown to plaintiff. Defendant answered by general and special denials; that plaintiff was an experienced man of mature years; that he had worked at the place where the explosion occurred long prior thereto, and must have known the danger. Pleaded assumed risk. Resulted in a verdict by jury for $1,000.

### Findings of Facts.

The defendant is a private corporation, and operates a cement plant near El Paso, Tex.; the plaintiff was an employé of the defendant, and while passing by the door of a tunnel of one of the buildings of defendant, in the discharge of his duties assigned to him, pushing a wheelbarrow of mud, an explosion occurred in the said tunnel, and by reason of the force of the explosion, plaintiff was thrown across the wheelbarrow and dragged or pushed along on the ground for some distance, and was thereby injured.

Binford testified:

"I am secretary and superintendent of defendant company and am familiar with the place where plaintiff was injured. At the place where he was injured, the building is in the same condition as it was at the time when his injuries occurred. I don't believe there has been any change in that part of the building since that time. I was not in town at the time the accident occurred; personally, I know nothing of the accident, nor as to where it occurred, except from the reports. I have a copy of the report of the accident. So far as I know, the physical conditions are the same in that part of the building where he was injured. The dryer is on the ground floor, and the grinder is on the same floor."

Referring to a sketch of the tunnel, he said:

"I don't know just where the plaintiff was working. I have indicated by 'X' as some place where he was working"

—and, referring to the sketch of the building, described the local conditions as applied to the accident, the building, the grinding mills for pulverizing the coal, the dryer and the cooler, etc., and further testified:

"A coal grinding plant is one of the parts of a cement plant that has always received a great deal of attention, because of the extreme fineness to which we have to pulverize the coal. * * * It causes more or less trouble because the coal available in this country is a semibituminous or heavy lignite coal, and it has a tendency to fire, after being pulverized, quicker than some other coal. * * * Coal, in itself, without being mixed with air, or other conditions, is not explosive by itself. In other words, the coal could be ground and laid upon the floor and lay there without being disturbed or mixed with air and would not explode, but it is the surrounding conditions, the mixture of certain air and gases that causes it to explode. There is a small stoker fire under the dryer, which is fed by an automatic stoker."

Oliver Dawson, who qualified as a chemical engineer, testified:

"I have visited the premises where the explosion occurred twice. The first time I was told the plaintiff was in the hospital; the second time was about two weeks ago. I don't know about the conditions at the time of the explosion."

He then described the condition and position of the grinder and dryer, and testified:

"I heard the testimony of the plaintiff. I casually examined the grinder. It is my opinion, based upon my experience and knowledge, that the conditions under which the grinding of the coal there were not safe, because the carbon laden air was in contact with a possible ignition. The ignitial source of danger was the coal pulverizer. I do not say that the conditions when I saw it were the same as when the accident occurred or not. I only say that if the conditions were the same, it was not safe."

Moreno, plaintiff, testified as to how the injury occurred:

"I was passing by the door when the explosion occurred, when I was right opposite the motor. The grinder is in the direction where the explosion came out from. I don't know how they dried the coal. I didn't see any fire in there where the dryer was. I don't know the conditions of the room where the dryer and mixer were, with reference to dust. I have seen it there before the explosion; there was dust in the room, dust all over there. I did not know that conditions of a room like that, filled with coal dust, as I have described, was dangerous."

[1] First. Was the evidence quoted sufficient to support the finding of the jury that the exact negligent act charged by the plaintiff to be the cause of the accident was the proximate cause of the accident and consequent injury to plaintiff? Is there any evidence that defendant failed to exercise ordinary care in providing plaintiff with a safe place to work? If not, then defendant's motion to instruct a verdict for it should have been sustained. While the evidence is largely circumstantial, it tends to prove the exact negligence alleged, and warranted the verdict. The evidence shows that the coal dust existed at all times when the plant was in operation; that the close proximity of the fire for drying to the pulverizer was the only thing which probably could have ignited the dust to cause the explosion, and exclude the idea that there was any other cause, and there is no attempt to account for the accident in any other way, although defendant by its employés were in full charge of the entire workings of the plant. The testimony that the coal utilized for the purposes of the plant was an inferior grade and had a tendency to fire, after being pulverized, quicker than other coal, and the further testimony of the expert that, in his opinion, the defendant had not taken the proper precautions to prevent explosions, and other facts attendant upon the immediate explosion, are sufficient

to warrant the finding of the jury that there was a lack in ordinary care upon the part of defendant to furnish a safe place to work.

[2] Second and Third. The court did not err in refusing special charges offered by the defendant, to the effect that the negligence must be proven, and cannot be assumed, and that plaintiff must prove the specific acts of negligence alleged by him before he can recover, because the court charged affirmatively in the main charge that the jury must believe from a preponderance of the evidence that the explosion was caused by the accumulation of coal dust, etc., as charged in the petition.

[3, 4] Fourth. Charges that the court erred in the seventh paragraph of its main charge: (a) In that it assumes the accumulation of coal dust as plaintiff had alleged without proof thereof; (b) and imposes upon defendant a greater burden than is required of it by law with regard to what it must do to provide a safe place for its employés to work. The paragraph complained of is as follows:

"With reference to the defense of the assumption of risk by plaintiff, the jury are instructed that if they shall find from the evidence that the accumulation of such explosive material, as plaintiff alleges accumulated and caused said explosion, if the same did accumulate, was an ordinary incident to the kind of work in which the plaintiff was engaged when the employer exercises ordinary care to avoid the accumulation and confinement of such explosive material in a condition to cause an explosion, they will find for the defendant, but if, on the other hand, they shall find from the evidence that experience has proved that there are practical means of avoiding the accumulation of such explosive materials, if such accumulation there was in rooms where persons may work, or about which they may work, or that there are practical means well known to the persons engaged in such work whereby such combustible material may be so rapidly eliminated as to prevent its gathering in such quantities as to cause an explosion, and that the defendant failed to use such means of avoiding danger to the plaintiff in or about the place wherein he was set to work, then the plaintiff did not assume the risk of failure on the part of defendant, if the defendant did fail to use such ordinary means and care of avoiding such danger to the plaintiff, and in determining whether the plaintiff should have known of the danger existing about where he was working, the jury will take into consideration whether or not such knowledge was such as an ordinary laborer, working about such premises, should understand, or was information which would not, in the nature of things, be known to others than men of science."

We fail to see how the charge is subject to the criticisms made, and appellant has not pointed out how or why.

[5] Fifth and Sixth. Charge that the court erred in permitting witness Dawson to testify:

"That it was his opinion that the conditions which he found, under which the grinding of coal was carried on at the time he examined the premises, was not such as to render it safe, because the carbon laden air was in contact with a possible source of ignition."

And to testify as to the means which have been discovered by experience of scientists to be practicable and useful in removing such dangers as existed at defendant's plant, and to further state that the pulverizer was the initial source of danger, the proposition being that it was not shown that the conditions were the same at the time of inspection by the witness as at the time of accident. We think the evidence quoted of Binford and plaintiff show clearly that the conditions had not changed.

[6] The second proposition is that the fact that scientists may have discovered other practicable methods than that in use by the defendant at the time of the explosion was immaterial, because the mere fact that there may have been other ways believed by others to be less dangerous would not show, or tend to show, negligence. Appellant has not referred us to the exact bill of exceptions in support of this assignment, but we take it that the one following is the one relied upon:

"The witness for plaintiff, Oliver B. Dawson, being on the witness stand, was asked by the attorney for the plaintiff the following question: What means have been found by experience of scientists engaged in these matters to be practicable and useful in removing such dangers as you found existing there? To which question the defendant objected on the ground that it imposes a greater burden than the law does—we are not required to use the best, even if they are known, but are only required to use reasonable care—and because it has been repeatedly held in this state that the master is not required to use the best-known device at all, nor are they the insurers of the safety, but all that is required is that he use reasonable care to keep the place in a safe condition, and if defendant has done that, the fact that there are better devices known that might have been used is a matter wholly immaterial, and the question is tending to place upon the defendant a burden greater than the law requires, which objections were by the court overruled, and the witness was permitted to answer the question as follows: 'To isolate the initial source of danger.'"

It will be noted that while the question called for "different means discovered," the answer is simply in line with the general testimony given by him in describing the conditions existing at the plant which, in his opinion, rendered it unsafe. He had testified as to how close the pulverizing machine was to the fire in the drying furnace, and the answer complained of is simply that this was the initial source of danger, so the effect of the testimony is that the pulverizer and the fire should have been further apart to make the place safe.

For the same reason, we think there was not error in permitting the witness to testify that:

"If forced ventilation or suction to draw off the air and dust, etc., had been used, it would make it safer without isolating the pulverizer" —as urged in the seventh.

Finding no reversible error in the record, the cause is affirmed.