## J. W. RIGGINS v. SILAS TRICKEY.

Decided May 29, 1907.

#### 1.—Conclusions of Fact and Law—Request for.

In the absence of a showing in the record that no request was made upon the trial judge to file conclusions of fact and law, it will be presumed that such conclusions found in the record were filed in compliance with a request.

#### 2.—Exchange of Land—Specific Performance.

In a suit to enforce specific performance of a contract for the exchange of lands, evidence considered, and held sufficient to justify the trial court in refusing to decree a specific performance, on the ground of misrepresentation as to value on the part of plaintiff.

#### 3.—Same—Requisites.

In order to require a court of equity to decree a specific performance of a contract for the exchange of lands the contract must be reasonably certain, unambiguous and based upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation, fraud, mistake, imposition, or surprise, and the situation of the parties must be such that specific performance will not be harsh or oppressive.

#### 4.—Same—Statements as to Value.

Statements of value made by the owner of property are held, as a general rule, to be merely expressions of opinion and not binding. But when such statements are made by one occupying a position of trust or confidence, or by one party to a sale who assumes to have special knowledge of the value of the property, in regard to which the other, being known to be ignorant, trusts entirely to the good faith of the former, it is proper to consider such representations as representations of fact.

#### 5.—Misrepresentation—Scienter.

In order to defeat the specific performance of a contract on the ground of misrepresentation it is not necessary to show that the misrepresentation was knowingly made; it is sufficient that the statement is actually untrue, and misled the party to whom addressed.

Appeal from the Sixty-first District Court, Harris County. Tried below before Hon. Norman G. Kittrell.

*George W. Graves* and *John G. Tod,* for appellant.—Misrepresen-

tations as to value and price are mere matters of opinion, are not regarded as material, can not be relied upon by the purchaser, and do not constitute actionable fraud. Varner v. Carson, 59 Texas, 305; Chicago, T. & M. Ry. v. Titterington, 84 Texas, 218; Mitchell v. Zimmerman, 4 Texas, 81; Greer v. Young, 2 U. C., 530; Newton v. Ganss, 7 Texas Civ. App., 90. (See also 154 U. S., 625; 97 Fed. Rep., 855; 61 Fed. Rep., 163; 14 Am. & Eng. Encyclopedia of Law, second edition, pages 41, 118 and 124.)

Simpkins on Contracts and Sales, chapter 26, pages 121, 122, 123 and 124, and authorities there cited.

Representations by the seller as to the value and price, if not made with such direct and positive statement, and such intent to deceive as entitles the buyer to rely upon them as the assertion of actual facts, are not material, and do not constitute actionable fraud, nor entitle the buyer to equitable relief. Chicago, T. & M. Ry. v. Titterington, 84 Texas, 218; Newton v. Ganss, 7 Texas Civ. App., 90; Cole v. Carter, 22 Texas Civ. App., 458; Kolp v. Specht, 11 Texas Civ. App., 689; Davis v. Driscoll, 22 Texas Civ. App., 15.

*L. B. Moody,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit, instituted by appellant, to enforce the specific performance of a contract for the exchange of certain lands owned by appellant in Wharton and Fort Bend Counties, Texas, for land of appellee in San Bernardino County, California, and in the alternative to recover damages for breach of the contract. It was alleged that on September 27, 1905, appellant and appellee entered into a written contract, which was modified on January 6, 1906, by an additional agreement, that by the terms of the two contracts appellee bound himself to convey to appellant a certain orange grove, consisting of twenty acres of land in San Bernardino County, California, for and in consideration of the conveyance to him, by appellant, of four hundred acres of land in Fort Bend County, Texas, and seven hundred and eighty-three acres of land in Wharton County, Texas, aggregating eleven hundred and eighty-three acres, and that appellee agreed to assume an indebtedness of nine thousand dollars existing on the Texas land. The lands of appellant were valued in the contract at $29,300, and the California land at $20,000. By the modification of the contract the incumbrance on the Texas land was increased $1,800 and seventy-two acres of land were added to the amount. A failure to comply with the contract was alleged and specific performance prayed for, and in case that could not be enforced, appellant prayed for damages in the sum of fourteen thousand dollars. Appellee set up misrepresentations on the part of appellant in regard to the value of the lands in Texas, and that he was deceived, misled and defrauded thereby, and he prayed for a rescission of the contract. The cause was tried by the court, without a jury, and judgment was rendered against appellant. There is no statement of facts but, although it does not appear that he was requested so to do, the court filed his findings of fact and law which appear in the record.

While it may be that under the provisions of article 1333, Revised Statutes, the trial court has no authority to file his conclusions of fact and law without being requested to do so by one of the parties, and the same should not be considered, still in the absence of a showing in the record that he was not requested to file such conclusions, the presumption will be indulged that the court filed the conclusions of fact and law because he was requested so to do. This is said for the reason that it is the contention of appellee that there was no request to file the conclusions of fact and law, and therefore they should not be considered. Necessarily, if they must be considered, the conclusions of fact of the trial judge must be taken as those of this court.

The court found that the parties had entered into the contracts as pleaded, that when the time had arrived for performance of the contract neither party was ready to close the deal and the time was postponed until February 3, 1906, and the time was then extended for a week at the instance and request of appellee. On February 7, 1906, appellee telegraphed appellant at Waco, Texas, where he had gone on a visit, that the deal must be closed immediately, and appellant took the train at once for Houston, and instructed his agents in Wharton to have the deeds signed and sent to Houston at once, and the deeds, properly prepared, reached Houston on the night of February 8, 1906. About 3 o'clock P. M. on that date appellee met appellant on the street and asked him if he was ready to close the trade and, being answered in the negative, he asked appellant if he would be ready to close on the next day, and he replied he was not sure as he did not know whether the deeds would reach Houston that night. Appellee then declared the deal off and next morning when appellant placed the deeds in a bank, according to the terms of the contract, the appellee declined to perform his part of the contract. Appellant put the statement in the contract that his lands were valued at $29,300 and appellee's at $20,000 and the court on that subject found as follows:

"The defendant stated that the plaintiff named a value of $25 per acre as the fair value of the land which he was to put into the deal in exchange for defendant's California property, and that he assured the defendant that that was the value of the land, and that the trade was made upon that basis; and this the plaintiff denies, at least to the extent that he did not make the trade upon the assurance that the land was worth $25 an acre, that he did not warrant it to be worth that, and that any fact arising out of mathematical calculation showing or appearing to show any statement as to $25 an acre is purely a coincidence. Upon this point, whatever may be the legal effect to be hereafter stated, I am constrained to conclude that $25 an acre for the land that the plaintiff was to put in was the understanding, and was impressed upon the mind of the defendant; and am further constrained to conclude that he proceeded rather upon the idea of an exchange of $20,000 worth of Texas lands for $20,000 worth of California lands, for the following reasons:

"First: The lands are valued by plaintiff in the contract at $29,300, and the incumbrance thereon, when the contract was made, was $9,000, and the defendant was to pay in addition $300 in oranges, and if the incumbrances and oranges be deducted · it leaves a net

value of the land at $20,000; and plaintiff himself testifies that the orange grove of defendant is worth on the market twenty thousand dollars ($20,000).

"Second: If the number of acres of land, 1183, be multiplied by 25, the product is within $275 of the $29,300 value put upon the land in the contract.

"Third: When the 72 acres excess in the Northington survey was discovered, which discovery gave the defendant that much more land, than he had contracted to buy, that land was put in at $1,800, which is exactly $25 an acre.

"Fourth: The defendant's property in California is put in at $20,000, valued at that, with a $3,000 incumbrance upon it, but he pays $3,000 in money and in oranges, or contracts to do so, which offsets the incumbrance and enables the plaintiff to pay it off, thereby leaving his (defendant's) land net $20,000 as against plaintiff's land.

"I conclude from the testimony of the plaintiff himself as supporting his own allegations, that the lands are really worth, fairly on the market about $16,000 and the incumbrance upon them is about $10,800 leaving the net value something less than $6,000.

"Concerning the relations that the parties bore to each other and the means of knowledge possessed by each, I find that the plaintiff was engaged on rather a large scale in handling Texas lands, and that he had been over the lands which he was to put into the deal, the title to which, however, was in another party who owned the lands and owed the money on them. I find that the defendant is an old man who lives in California and is engaged in raising oranges; that some four years ago he bought some land near Fairbanks, in Harris County, Texas, a station on the Central Railroad some 12 or 15 miles north of Houston, and that he had bought some land at one time in Louisiana, but that he had never seen the lands involved in this action until just before the contract was made, when he went over part of them in a buggy and saw a part of them from a train as he passed, and he did not see the lands any more from that time until he declared the contract at an end.

"I do not find it necessary to state a conclusion that the plaintiff intended to defraud or overreach the defendant, but from all the facts and circumstances in evidence I am led to the conclusion, after as careful reflection as I possibly could give to it, that the plaintiff made upon the mind of the defendant, by his actions and assertions and the contract made with him, the impression that the land was worth $25 an acre, and that the defendant relied upon that statement, and so relying upon it was induced to enter into the agreement, and that he did not have the knowledge of the value of the lands in Texas that the plaintiff had; and that, while four months elapsed between the making of the contract and the alleged final breach, yet there seems to have been nothing to indicate to the defendant that the lands were not worth what they were put into the contract at, and nothing, so far as I can see, to put him upon inquiry, and I must infer that a knowledge of what the actual

values were, was disclosed first when this suit was brought, on the day that he first declined to carry out the contract.

"The plaintiff testifies that the defendant's lands in California, 20 acres of oranges, is worth $20,000, but that the lands he puts into the deal, or the title to which he was to cause to be delivered to the defendant, while valued in the contract at $29,300 was really worth only about $16,000, and that the value named for it in the contract was only a "trading" value; but, from the fact that defendant's land is put in at its actual value, and for the reasons heretofore given as to my conclusions as to the $25 an acre feature, I can reach no other conclusion but that both bodies of land were put in, both the California and the Texas lands, and were understood to be put in by the parties at their market value. I can see no distinction between that statement in the contract and any other statement of fact in it."

The trial judge concluded in effect as a matter of law that appellant had misrepresented the value of his lands to appellee and had thereby led him into entering into the contract and that the same should not be enforced.

While the trial court treats appellant's representations quite tenderly and says that it is unnecessary "to state a conclusion that plaintiff intended to defraud or overreach the defendant," yet his finding that appellant swore that the lands, which he valued at $29,300 in the contract and which he had represented to appellee to be worth that sum, were worth only $16,000, and that appellee's orange grove was worth $20,000 can lead to no other conclusion. Appellant knew when he represented the value of his lands to be $29,300, that it was only $16,000, and the representation could have been made for but one purpose, and that was to deceive the unwary old man from California.

A suit to compel specific performance of a contract falls under the exclusive jurisdiction of a court of equity, and must be governed by the same general rules which prevail in the administration of all equitable remedies. The right to the remedy depends upon certain conditions, elements and incidents such as that, the contract must be reasonably certain, unambiguous and based upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation, misapprehension, fraud, mistake, imposition, or surprise, and the situation of the parties must be such that specific performance will not be harsh or oppressive. Pomeroy's Eq. Jur., 1405. The statement of these rules shows that a weaker case is sufficient to defeat specific performance than to enforce the remedy. And in such cases the party invoking the equitable remedy must come into the court with clean hands.

Appellant has come into a court of equity to enforce the specific performance of a contract entered into by appellee to convey certain land, owned by him, to appellant, in consideration of the conveyance to him of certain lands owned by appellant. He is asking of a court of equity that appellee be compelled to convey to him an orange grove, which he admits is worth $20,000, and pay for him $10,800 in money, and in consideration for such conveyance and the

payment of said money, he tenders a deed to lands which he alleges and proves are worth about $16,000 and agrees to assume an incumbrance on the orange grove of $3,000. The mere statement of the proposition shows how utterly unfair, unjust and unconscionable it is, and brings it fairly within the category of those contracts which a court of equity will not enforce. The burden rested upon appellant to show that under the circumstances specific performance would be just and equitable, and that it would not be hard and oppressive on appellee. The court did not abuse the discretion, that rests with a court of equity in such cases, in refusing to compel specific performance of the contract. Miles v. Dover Iron Co., 125 N. Y., 294; Stokes v. Stokes, 155 N. Y., 581.

Statements of value made by the owner of property are held, as a general rule, to be merely expressions of opinion and not binding on those who make them. There is some diversity of opinion upon the effect of representations concerning value, but it is safe to say that the rule that representations of value will not be considered by courts is not without its exceptions. For instance, in case such representations are made by a person holding a position of trust or confidence, or by one party to a sale who assumes to have special knowledge of the value of the property, in regard to which value the other, being known to be ignorant, trusts entirely to the good faith of the former, it is proper to consider such representations in the same way that representations as to facts are treated. Newton v. Ganss, 7 Texas Civ. App., 90; Miller v. Barber, 66 N. Y., 563.

The matter is thus stated by Mr. Pomeroy: "Wherever a party states a matter, which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation. The statements which most frequently come within this branch of the rule are those concerning value." The rule thus stated is fortified by numerous cases, among the number being Haygarth v. Wearing, L. R. 12 Eq. 320, in which it is said: "Independently of any fiduciary relation, this court holds that a person obtaining a conveyance of real estate on the faith of certain representations, which are afterwards shown to be untrue, must submit to have the conveyance treated as fraudulent and void against the person deceived. In this case the representation that he made to her was, that the value of what she had to sell was about one hundred pounds. This was not a mere purchaser's assessment (i. e., estimate or opinion), but a deliberate statement made to her by a person having full knowledge, which statement was asked by her for her guidance in the transaction and was acted upon by her in reliance on its good faith and honesty." The facts found by the trial court bring this case clearly within the purview of the law as stated in the foregoing quotation.

Appellant invokes the test of whether the facts would entitle appellee to a rescission of the contract, but that is not the test, but

the issue is, has appellant shown himself entitled to a specific performance of the contract under the well established rules of equity? Has appellant shown a perfectly fair contract free from misrepresentation, fraud or misapprehension, that does not evidence an unconscionable or hard bargain, and that is not in its performance oppressive upon appellee? Has he come doing equity at the same time that he is seeking equity, and has he come into court with clean hands? It can not be said that a contract is fair where it has been induced by false representations, and it can not be said that it would not be unconscionable and unjust to force appellee who was induced by such false representations to sign the contract, to give up property worth $20,000 for property worth, with its incumbrances, perhaps one-fourth of that sum.

The effect of the conclusions of fact of the trial court was to establish fraud and misrepresentation in regard to the value of the land, and appellant should not complain that the judge did not use as strong terms as might have been appropriate in designating the acts established by the facts. He did find that appellee was an old man who lives in California, that he did not have the knowledge of the value of Texas land possessed by appellant, who is a large dealer in Texas lands and was acquainted with the value of the lands named in the contract, that appellant caused appellee to believe that the land was worth $25 an acre, and, relying upon the representations of appellant, he had entered into the contract. The trial judge concluded from all the facts that specific performance should not be enforced, and in the absence of a statement of facts we must presume that conclusion is sustained by the facts. No complaint is made as to the refusal of the court to allow any damages for breach of the contract.

There is no merit in the contention of appellant that in order to invalidate a contract on the ground of misrepresentation it must appear that it was made with intent to deceive. That contention is thus answered by Mr. Pomeroy: "In setting up a material misrepresentation to defeat the specific performance of a contract, the element of a *scienter,* of knowledge, of belief with or without reasonable grounds, or of intent, is wholly unnecessary and immaterial. So far as this most essential element of a fraudulent misrepresentation is concerned, it is sufficient to defeat a specific performance that the statement is actually untrue so as to mislead the party to whom it is addressed; the party making it need not know of its falsity, nor have any intent to deceive; nor does his belief in its truth make any difference." Eq. Jur., section 889. The decision in such cases does not turn on the question of knowledge or intent, but is based on the fact of the other party having been misled. Appellee was just as badly deceived by the misrepresentation though made with implicit and confiding faith in its truth, as he would have been had it been with the vilest motives.

We conclude that there is no error in the judgment and it will be affirmed.

*Affirmed.*

Writ of error refused.