**GREENAMEYER et al. v. McFARLANE et al. (No. 7779.)**

(Court of Civil Appeals of Texas. Galveston. March 18, 1920. Rehearing Denied April 15, 1920.)

1. Specific performance ⬅94 — Violation of promise to act in future does not prevent specific performance unless promise made without intent to perform.

In an action for specific performance of a contract to convey an oil lease, defendants cannot escape liability because of plaintiff's mere nonperformance of an oral promise to perform an act in the future unless the promise was made without intention of performance and was relied on by defendants; hence an answer merely setting up nonperformance is open to demurrer.

2. Appeal and error ⬅1040(13)—Overruling of demurrer harmless where judgment was right.

Where under the findings of the jury judgment must have gone for defendants, the fact that the court erroneously overruled a demurrer to a paragraph of the answer is harmless.

3. Specific performance ⬅116—Answer alleging facts showing plaintiff's abandonment of contract not subject to demurrer.

In an action for specific performance of contract to convey an oil lease, answer alleging plaintiff, to bind the bargain, gave a check on a nonexistent bank, and that she had no bank deposit as claimed, coupled with the fact that plaintiff did not return as agreed and deposit the sum in cash, and made no attempt to enforce the contract for a long time, is not open to demurrer.

4. Specific performance ⬅51—Contract will not be specifically enforced unless fair and equitable.

To obtain specific performance of a contract it must be reasonably certain, unambiguous, and based on a verbal consideration as well as free from any misrepresentations or fraud; a party invoking equitable remedies being bound to come into court with clean hands.

5. Specific performance ⬅120—Where plaintiff guilty of fraud contract will not be enforced.

In a suit for specific performance of contract to convey an oil and gas lease, evidence that plaintiff deposited a worthless check to bind the bargain is admissible, regardless of

evidence that defendant falsely represented the check was good, and that she would shortly substitute the sum in cash.

**6. Appeal and error ⬤═1062(5)—Submitting immaterial issues not prejudicial.**

Error of the trial court in submitting immaterial issues to the jury is harmless and constitutes no reason for reversal of the judgment, where the record as a whole shows that the appellant was not prejudiced.

**7. Specific performance ⬤═121(8) — Evidence held to establish fraud in obtaining contract for conveyance of oil lease.**

In a suit for specific performance of a contract to convey an oil lease, evidence *held* to necessitate a judgment for defendant establishing plaintiff's fraud in procuring the contract, etc.

Error from District Court, Harris County; Wm. Masterson, Judge.

Suit by A. G. Greenameyer and another against J. H. McFarlane and others. There was a judgment for defendants, and plaintiffs bring error. Affirmed.

See, also, 199 S. W. 304.

L. A. Carlton, Jno. B. Warren, and Woods, Barkley & King, all of Houston, for plaintiffs in error.

E. P. & Otis K. Hamblen, of Houston, for defendants in error.

LANE, J.　This suit was brought by A. G. Greenameyer and Florence Robinson, hereinafter called plaintiffs or appellants, against J. H. McFarlane, B. C. Armstrong, C. F. Gydeson, and C. T. Rucker, hereinafter called defendants or appellees.

Plaintiffs alleged that on the 20th day of April, 1916, they purchased from the defendants J. H. McFarlane and B. C. Armstrong a certain oil and mineral lease on two certain lots or tracts of land aggregating about five acres, a part of the Wm. Scott league, situated near Goose creek in Harris county, Tex., said lease being subject to one-eighth royalty, and that they also purchased all the machinery, tools, and equipment situated on said land, as per certain contract which is in substance as follows:

"Contract and agreement made and entered into by and between B. C. Armstrong and J. H. McFarlane, of Harris county, Tex., parties of the first part, and Florence Robinson, of Cook county, Ill., party of the second part, witnesseth: That for and in consideration of the sum of two thousand dollars ($2,000.00) in cash, evidenced by draft on the Illinois State Savings Bank of Chicago, Ill., which is attached hereto, and the agreement upon the part of the party of the second part to pay a further sum of eight thousand ($8,000.00) in cash, parties of the first part hereby agree to sell, convey, and assign to party of the second part the following described property:

"Oil and mineral lease on the following de-scribed land, situated in the Goose Creek oil field and inspected by party of the second part on or about the 11th day of April, 1916, same being a part of the Wm. Scott lower league in Harris county, Tex., being the league east of Goose creek, and known as all of lot 10 of the Patillo Higgins subdivision, as shown by plat, which is of record of the Record of Maps and Plats of Harris County, Tex., containing 3.58 acres, and also that part of lot No. 12 of the same division, described more particularly as follows: [Here describing same by metes and bounds.] The said oil and mineral lease being subject to one-eighth royalty.

"All of the machinery and equipment situated upon the above-described land, as per inventory attached hereto, and made a part hereof, signed by parties of the first part, and marked Exhibit A.

"Parties of the first part agree to transfer all of the above-described property to party of the second part free and clear of any and all claims or indebtedness, for the total purchase stated above, ten thousand ($10,000.00) dollars.

"Parties of the first part are to furnish to party of the second part an abstract of the title to said land, brought down to date, showing good title to said property, same to be subject to investigation of party of the second part, and are also to pay off all claims or liens on said machinery and equipment out of the purchase price herein named; it being understood by all parties that every claim or indebtedness against this property is to be paid out of the purchase price, so that when the said ten thousand dollars is paid said party of the second part is to get this property clear and free of all claims of liens.

"Immediately after title to said property is approved all of the purchase money is to be paid in cash, and if said title to all property is good and party of the second part fails to pay the purchase price herein named, then the said two thousand dollars attached hereto shall be forfeited to the parties of the second part as liquidated damages, but if the title is not good and cannot be made good, then the two thousand dollars attached hereto is to be returned to party of the second part and this contract to be null and void and all parties released therefrom.

"It is agreed by all parties that parties of the first part are to run one full tank of oil from said premises, and after this is done all remaining oil and production is to go to credit of party of second part.

"All money to be paid hereunder is to be paid through the Lumberman's National Bank of Houston, Tex.

"Witness our hands at Houston, Tex., this 20th day of April, A. D. 1915. B. C. Armstrong, J. H. McFarlane, Parties of the First Part. Florence Robinson, Party of the Second Part."

The machinery, tools, and equipment referred to in the contract are composed of more than 60 different articles, and are described in an exhibit attached to the contract as boilers, supply house, cook shack, pumps, producing wells, fuel tanks, water tanks, small tools, swivels, etc.

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Plaintiffs further alleged that said contract was negotiated in the name of Florence Robinson, but in fact and in truth the plaintiff A. G. Greenameyer was equally interested with her in the same, and the beneficial title to said property purchased was in the plaintiffs jointly, each owning a one-half interest therein under an agreement between themselves to the effect that said Greenameyer was to furnish the purchase money necessary to buy said property and be repaid out of the proceeds derived from said lease, and thereafter the plaintiffs were to own and operate said property for their joint account; that they and each of them on the date of said contract, and at all times since, were ready, able, and willing to make good the terms of their purchase upon the production by the said defendants of said abstract of title showing good title to said property, giving plaintiffs a reasonable time in which to have the same examined by reputable attorneys and proof presented of the fact that said property was free of liens and claims as in said contract provided, and plaintiffs further alleged that they were then and there ready, able, and willing to take said purchase on the terms agreed on in said contract upon the defendants delivering said abstract of title and producing proof that same is good and free of claims and liens, and accounting for the oil produced from said lease since the date of said contract, to wit, April 20, 1916, save one full tank at the prevailing market price when sold, said oil at the prevailing market price, or the proceeds thereof to be a credit on said purchase price; that the defendants C. F. Gydeson and C. T. Rucker were claiming some interest or right in said property sold by said contract, the exact nature of which plaintiffs did not then know, but on information and belief alleged that said claim or interest was derived from the defendant B. C. Armstrong, and said defendants Gydeson and Rucker had notice, actual and constructive, of plaintiff's right therein, and of said contract, when they became interested in said property.

They further alleged that defendants McFarlane and Armstrong had failed and refused to deliver the abstract of title mentioned in the contract, and still refuse so to do, and are refusing to perform their part of said contract.

They further alleged that they are able and willing to pay in full the purchase price according to the terms of the contract and offered to tender the amount due defendants, and demanded the delivery of the abstract of title showing title to the property by the contract conveyed and proof by defendants McFarlane and Armstrong that there were no claims or liens against the property.

The concluding paragraph of their petition was as follows:

"Plaintiffs bring this suit for a specific performance of said contract according to its terms, and for an accounting, and for a receiver to be appointed as aforesaid, and pray that defendants be cited according to law, and on final hearing plaintiffs have judgment requiring defendants to specifically perform said contract as it is written, and for costs of suit, and all relief, general and special, legal and equitable, to which they may be entitled under the facts, as in duty bound they will ever pray," etc.

Defendants answered by general demurrer and by special demurrer as follows:

"These defendants specially except to plaintiffs' pleadings, and say that it is thereby shown that the contract pleaded and relied upon by them is unenforceable by specific performance, for this, that same gave plaintiff Robinson the election either to perform same or to breach same by paying $2,000 as liquidated damages for breaching same, and, inasmuch as same could not be enforced by specific performance against said plaintiff Robinson, same is not enforceable against these defendants on account of lack of mutuality of remedy, and these defendants pray judgment by reason thereof."

The defendants also alleged that the contract sued upon was without consideration, in that Florence Robinson agreed to put up $2,000 in cash to be paid to the plaintiffs as liquidated damages in the event of her failure to perform said contract, and gave a draft in favor of such parties for said sum on the Illinois State Savings Bank of Chicago, which was not good or collectible; that she had no deposit, or account, or credit, or arrangement with any such bank for the honoring or payment of such draft. Defendants alleged also in their answer that Florence Robinson and Charles M. Watson, who they alleged was her agent in the making of said contract, and before the signing of said contract, stated that she did not have the $2,000 in cash, but that they were going to Dallas that night, and would return to Houston two days later, and would put up $2,000 in cash in lieu of the draft mentioned in the contract sued on, and that the parties to the contract could consummate the sale of the property covered by such contract.

Defendants also alleged that Florence Robinson did not return and put up the $2,000 in cash in lieu of the draft attached to the contract, as she had agreed to do, which agreement was the controlling consideration, causing and inducing defendants McFarlane and Armstrong to make said contract, and that she thereby breached the contract, and the consideration inducing said defendants to make the contract had failed. They further alleged that Florence Robinson and her agent, Watson, left Houston, abandoned the contract, and intended not to perform same, and that they did not communicate further with defendants, and wholly failed to advise them of their whereabouts, and asserted no rights under the contract until after the deep strata of oil had been developed in the Goose Creek oil field in the latter part of August, 1916, and that they were not ready, willing,

and able to perform said contract, and therefore were estopped to assert their claim. They also alleged that in order to prevent the lease involved and owned by them from being forfeited it was necessary that said property be operated and developed under the conditions of the lease, etc., and that in operating and developing said lease they had incurred expenses aggregating the sum of $133,139, an itemized statement of which was contained in their answer.

Defendants Gydeson and Rucker alleged that they had acquired their one-half interest in said property in good faith and for a valuable consideration without knowledge or notice of plaintiffs' claim. They also pleaded estoppel, and all defendants prayed for judgment removing the cloud cast upon their titles by reason of plaintiffs' claim.

By supplemental petition plaintiffs specially excepted to all parts of defendants' answer wherein they alleged as a defense conversions, negotiations, promises, etc., made prior to the execution of the written contract, because all agreements binding upon plaintiffs were merged in the written contract, and it alone is conclusively presumed to be the whole engagement and obligation of the parties thereto, and the extent and manner of their undertaking, and for such reasons parol evidence is not admissible to contradict or vary or add to the terms of the contract as it is written. They denied that C. M. Watson was the agent of Florence Robinson, as alleged by defendants, and also denied that either Florence Robinson or C. M. Watson ever agreed with defendants McFarlane and Armstrong, or either of them, to put up $2,000 in cash, as alleged by defendants, at or prior to the time of signing of the contract. They also alleged that defendants Gydeson and Rucker had notice of plaintiffs' claim prior to the acquisition of their interest in said properties.

We think the foregoing statement of the pleadings of the parties is sufficient for a comprehensive understanding of the opinion to follow.

The cause was tried before a jury. The jury was instructed that the uncontroverted evidence supported the claim of defendant Gydeson to one half interest in the property involved in the suit, and that the only question to be submitted and answered by them related to the other half interest in the lease contract. Following this instruction, in answer to special issues submitted to them, the jury found:

First. There was no such bank as "Illinois State Savings Bank of Chicago" in the city of Chicago on the 20th day of April, 1916, the date of the contract in question.

Second. The draft for $2,000 signed by Florence Robinson in favor of B. C. Armstrong and J. H. McFarlane, of date April 20, 1916, which was attached to the contract sued on was not collectible; that Florence Robinson had no funds on deposit with the bank upon which the draft was drawn, nor did she have any credit with such bank entitling her draft to be honored.

Third. Florence Robinson at the time of signing the draft attached to the contract sued upon in this case did not represent to the other parties to such contract that the draft was good and that she had funds in said bank or in Chicago to meet same.

Fourth. Florence Robinson at the time of signing the draft attached to the contract sued on in this case did intend and expect with money she then had or credit she then had at other banks to meet and pay off the draft for $2,000 given by her to the said McFarlane and Armstrong when same became collectible.

Fifth. That they believed from the evidence that Florence Robinson or Charles M. Watson, prior to the execution of the lease contract sued upon, did promise and agree with defendants McFarlane and Armstrong that they would return to Houston on the Saturday following the execution of said contract and place in the hands of H. R. Elwood, in escrow, $2,000 in cash, in lieu of the draft attached to the contract.

Sixth. Florence Robinson and Charles M. Watson did not agree before or at the time of the execution of said lease contract that same was not to be effective unless the $2,000 in cash was placed by them with Elwood in lieu of the draft attached to the contract.

Seventh. The representations and agreements on the part of Florence Robinson and Charles M. Watson, which defendants alleged induced McFarlane and Armstrong to execute the contract sued on, did in fact induce the execution and delivery of the same by McFarlane and Armstrong.

Eighth. McFarlane and Armstrong did believe the representations with reference to the cash payment of $2,000 to be true.

Ninth. Had McFarlane and Armstrong believed said representations to have been false they would not have executed and delivered the contract.

Tenth. Florence Robinson and Charles M. Watson did abandon the contract after its execution.

Eleventh. McFarlane and Armstrong did not furnish plaintiffs the abstract of title described in the contract.

Twelfth. The plaintiffs were not ready, willing and able to carry out and comply with the provisions of the contract on the 20th day of April, 1916, or at the time of the filing of this suit by them.

Thirteenth. The defendants failed and refused to carry out the provisions of the contract prior to the institution of this suit.

Upon the evidence and the verdict of the jury the court rendered judgment for the defendants. Plaintiffs have appealed.

[1] By the first and second assignments it is insisted in different forms that the court erred in overruling the plaintiffs' special demurrers to paragraphs 5 to 8 inclusive, of defendants' answer, reading as follows:

"V. Further answering, if need be, these defendants say that the purported contract declared upon by plaintiffs was without consideration, and in the essential inducement and basis of same the consideration failed, in this, that plaintiff Robinson, one of the parties to such contract, who was a nonresident and nonproperty holder of the state of Texas, as an inducement to the other parties to enter into such contract and as a condition upon which they would enter into same and as a protection to the other parties thereto in binding themselves and their property as against the contingency of her failure to perform said contract on her part, she agreed to put up $2,000 cash to be paid to such other parties as liquidated damages in the event of her failure to perform such contract on her part, and gave a draft in favor of such other parties for said sum on the Illinois State Savings Bank of Chicago, but such draft was not good or collectible; that she had no deposit or account or credit or arrangement with any such bank for the honoring or payment of such draft; that same was worthless and of no value; that the inducing consideration for the making of said contract by such other parties and the condition upon which they were to proceed with the carrying out of same failed in the manner and by virtue of the facts stated, and the same are now pleaded in bar of plaintiffs' suit.

"VI. These defendants further say, if need be, that on the day the contract sued upon by plaintiffs was to be executed plaintiff Robinson and her agent, Charles M. Watson, who represented her and concluded the negotiations for her in making said contract, stated that she did not have in cash the $2,000 to be put up by her, but that they were going to Dallas, Tex., that night, which was Thursday, April 20, 1916, and would return to Houston two days later, to wit, on the following Saturday; that in the meantime, in order to execute the contract upon said date agreed upon for so doing, she would give a draft for said sum of $2,000 in favor of the other parties to said contract on the Illinois State Savings Bank of Chicago, representing that same was good and would be honored; that she had money on deposit in said bank to protect said draft, and that same would be paid; that upon their return to Houston on said following Saturday they, the said plaintiff Robinson and her said agent, Watson, would put up $2,000 cash in lieu of such draft, and that the parties to the said contract would consummate the sale of the property covered by such contract; that said agreement on the part of plaintiff Robinson to so return to Houston, put up said sum of $2,000 cash, and consummate said sale with such other parties constituted and was an independent agreement made for the purpose of and had the effect of inducing such other parties to enter into the contract sued upon by plaintiffs in reliance thereupon, and but for which such other parties would not have entered into such contract; that plaintiff Robinson and her said agent, Watson, left for Dallas, Tex., on the Thursday night mentioned above, but did not return, as agreed, and did not put up such $2,000 in cash, as agreed, and wholly breached their said agreement to put up said cash sum, and such breach of such agreement caused the inducing and controlling consideration for such other parties entering into such contract to fail, and such breach of such agreement and resulting failure of consideration and the facts hereinabove alleged in connection therewith are pleaded in bar of plaintiffs' suit.

"VII. These defendants further say that after the execution of the contract sued upon by plaintiffs the plaintiff Robinson abandoned same, in that, after giving the draft aforesaid under the representations alleged, which draft was uncollectible and representations untrue, as stated, and after agreeing to put up $2,000 cash and breaching such agreement, as alleged, and after agreeing to return to Houston in two days and consummate the sale of the property covered by said contract, plaintiff Robinson and her said agent, Watson, left Houston and abandoned said contract and intended not to perform same in the belief that it was not advantageous to them, and wholly failed to return to Houston and keep their promises and agreement hereinbefore alleged, and in no manner communicated with or advised such other parties of the reason for not keeping such promises and agreement and not consummating the sale of said property, and wholly failed to advise these other parties to said contract as to their whereabouts, and, having abandoned said contract, thereafter made no claim and asserted no rights thereunder to said property in its then condition and value; that in the latter part of August, 1916, the present producing deep strata of paying oil was discovered in the Goose Creek oil field, where the property in controversy is situated, which rendered the value of this property many times more valuable than it formerly was when said contract was entered into and breached and abandoned by plaintiff Robinson, and its sale price was enhanced many times what it was before the discovery of said strata, and as a result much excitement was created in the field where it was located, and there was much trading in and leasing of property surrounding and in the immediate vicinity of this property; that thereafter, under such new and changed conditions and after having abandoned same as aforesaid, plaintiff Robinson and her said agent, Watson, returned to Houston, and she and her associate plaintiff filed this suit in an effort to recover said property; wherefore these defendants pleaded such abandonment in bar of plaintiffs' suit, and say by virtue of the facts stated they are estopped to maintain their claim against these defendants for said property.

"VIII. These defendants refer to the allegations above made as to the giving of said draft under the circumstances and representations aforesaid, and of said draft being uncollectible, and such representations untrue, inducing such other parties thereby to enter into said contract, and refer to the aforesaid agreement to put up $2,000 in cash and thereby inducing such other parties to enter into said contract, which agreement was breached by plaintiff Robinson, and refer to plaintiff Robinson's abandonment of said contract after she executed same, as alleged above, and, pleading same together and severally, say plaintiffs are estopped to maintain this suit and that same constitute a bar to plaintiff's suit."

The reasons assigned in support of the special demurrers are: First, that the an-

swer of defendants admits the execution of the contract sued upon as written; that in law and in equity all prior conversations, negotiations, etc., are merged therein, and the written instrument is conclusively presumed to be the whole engagement and obligation of the parties and the extent and manner of their undertaking, and that parol evidence is not admissible to contradict or vary, or add to, the terms of the agreement as written, all of which the facts pleaded in such paragraphs seek to do; second, because there was no sufficient allegation of fraud, accident, or mistake to justify admission of evidence in support of such pleas.

After a careful examination of defendants' answer, we have failed to find any allegation to the effect that the alleged promises made by Florence Robinson and Charles M. Watson to place $2,000 with Elwood within two days after signing the contract, in lieu of the draft attached thereto, were fraudulently made for the purpose of inducing defendants McFarlane and Armstrong to execute the contract and were made without any intention at the time to perform the same. An allegation that one of the parties to a written contract made promises to perform certain acts in the future, and that such promises induced the other or complaining party to execute the contract, and that such promises were never performed, is insufficient as a defense in avoidance of such written contract for fraud. It is not enough to allege that the promises to do some act in the future were made, and that defendants relied upon them and would not otherwise have executed the contract, but to constitute a defense upon the making and failure of performance of the acts it must also be alleged that such promises were fraudulently made; that is, made for the purpose of inducing the execution of the contract by defendant, and without any intention at the time of making to perform the same.

[2] For the reason pointed out, we have reached the conclusion that the special demurrer to said paragraph 6 should have been sustained, and that the court erred in not so doing. But we have also reached the further conclusion that, in view of the answer of the jury to special issue No. 6, to the effect that Florence Robinson and Charles M. Watson did not agree before or at the time of the execution of the contract that the same was not to be effective unless the $2,-000 in cash was placed by them with Elwood in lieu of the draft attached to the contract, the error of the court in overruling the special demurrer to said paragraph 6 was cured and rendered harmless.

[3] We think, however, the court correctly overruled the special demurrers addressed to paragraphs 5, 7, and 8.

By paragraph 5 it is alleged that the inducing consideration for the defendants McFarlane and Armstrong to enter into and execute the contract had failed in that the check or draft given by Florence Robinson, and attached to the contract as forfeit money, was worthless and uncollectible.

By paragraph 7 they alleged the contract and set forth her acts and conduct which they construed as acts and conduct showing abandonment of the contract by her; and by the eighth paragraph they charge that by reason of the matters and things alleged in paragraphs 5, 6, and 7 the plaintiffs are estopped to maintain this suit. All these allegations were pertinent, material, and relevant matters of defense and were properly pleaded as such, and, if proven, they would constitute a perfect defense to the plaintiffs' suit.

[4, 5] By the third and fourth assignments it is insisted that the court erred in permitting the witness H. E. Dunseth, over the objection of plaintiffs, to testify that before the contract was signed Florence Robinson stated to defendant McFarlane that she had funds in the Illinois State Savings Bank of Chicago to protect the draft to be attached to said contract, and that such draft was good and would be paid.

We think the court properly admitted the testimony. This is a suit to compel specific performance of a contract and falls under the exclusive jurisdiction of a court of equity and must be governed by the general rules which prevail in the administration of equitable remedies. In the case of Riggins v. Trickey, 46 Tex. Civ. App. 569, 102 S. W. 920, in speaking of equitable remedies, the court said:

"The right to the remedy depends upon certain conditions, elements, and incidents, such as that the contract must be reasonably certain, unambiguous, and based upon a valuable consideration; it must be perfectly fair in all its parts, free from any misrepresentation, misapprehension, fraud, mistake, imposition, or surprise; and the situation of the parties must be such that specific performance will not be harsh or oppressive. Pomeroy's Eq. Jur. 1405. The statement of these rules shows that a weaker case is sufficient to defeat specific performance than to enforce the remedy, and in such cases the party invoking the equitable remedy must come into the court with clean hands."

The undisputed evidence shows that, to induce defendants McFarlane and Armstrong to sign the contract, Florence Robinson attached to the same a check or draft drawn on a bank not in existence, that she had no money in the bank named, nor in any other bank in Chicago, and that she had no credit with any bank in Chicago which would have made the check or draft collectible. It was also shown that she had no money in any bank at any place subject to draft or check, and that such check or draft was worthless and uncollectible. Thus it was shown that the contract was unfairly obtained by means of misrepresentations and imposi-

tions to and upon the other parties thereto. Independently, however, of the testimony admitted over the objection of plaintiffs—that is, "that Florence Robinson told McFarlane before the contract was signed that she had funds in the Illinois State Savings Bank of Chicago to protect the draft"— the fact that she gave the check or draft was an implied statement that the draft was good and collectible. That such statement was untrue, and that it was made for the purpose of inducing McFarlane and Armstrong to sign the contract, and that it did so induce them, must be conceded.

By the assignments 5 to 9, inclusive, complaint is made of the refusal of the court to sustain special exceptions to the defendants' answer. We have carefully examined the answer with reference to all the special exceptions urged thereto, and after such examination have reached the conclusion that all of the exceptions should be overruled except the one addressed to paragraph 6, which we have already stated should have been sustained.

By the tenth assignment it is insisted that the court erred in permitting defendant McFarlane to testify that plaintiff Florence Robinson and Charles M. Watson represented to him before the execution of the contract that she had money in Chicago, etc. We have already stated, in the discussion of assignments 3 and 4, that we think such testimony as is here objected to was admissible, and further discussion here is unnecessary.

Without undertaking to discuss in detail the contentions presented by the remaining 27 assignments, we shall content ourselves by stating that after a consideration of these numerous assignments we have reached the conclusion that none of them present reversible error.

[6, 7] We have also reached the conclusion that the evidence amply supports, if it does not compel, the rendition of the judgment entered.

It is well settled that error of the trial court in submitting immaterial issues to the jury or the findings of the jury in answer to such issues are harmless and constitute no reason for a reversal of the judgment rendered. Especially is this true when the record as a whole, as in this case, shows that the rights of appellants were not prejudiced by reason of the submission of such issues and the answers of the jury thereto. We have before us a full statement of the facts proven upon the trial, and after a careful consideration thereof we have reached the conclusion, as already stated, that such facts not only amply support the findings of the jury upon the material issues, and the judgment based thereon, but they show that no judgment other than the one from which this appeal is prosecuted could have been properly rendered.

It is shown that by the terms of the lease contract under which defendants McFarlane and Armstrong held the land in controversy they were to begin and continue the development of the land as mineral producing land and to market such minerals as found and to turn over to the lessor one-eighth of the value thereof, and that a failure on their part to continue such operation would work a forfeiture of said lease, thus making it apparent that the fact of appellants leaving Houston immediately after signing the contract, and without informing appellees of their whereabouts for about four months, rendered it imperative that appellees, before the return of appellants, should incur large expenditures of money, largely in excess of the $10,000 to be paid by appellants for the lease, so as to prevent a forfeiture of the lease held by appellees. This long unaccounted for absence of appellants, and the long delay on their part to interest themselves in the consummation of the contract, taken in connection with the facts known to them that the development of the property had to be continued at a large expense, that changed conditions in the property must appear, and that its value would likely violently fluctuate either for better or worse, would in our opinion render it inequitable, under other facts and circumstances shown, to decree specific performance as prayed for by appellants.

It was shown that on the same day the contract was executed Florence Robinson, a party to the contract, and one Charles M. Watson, a party interested therein, left Houston; that they promised to return in two days and deposit $2,000 in lieu of the check attached to the contract; that they were not heard from by appellees from the time they left until the 1st of November, some six months after leaving; that in a short while after Florence Robinson and Watson left Houston after executing the contract, and after they failed to return in two days, as they promised to do, appellee McFarlane, upon inquiry, learned that there was no such bank in Chicago as that named in the check given by Florence Robinson; that Florence Robinson had no money in the bank named or in the State Bank of Chicago, nor any line of credit with such bank; that on learning these facts he concluded that Florence Robinson had abandoned the contract and so informed Elwood, who held the contract in escrow, and also told him that the deal was off; that thereafter one-half interest in the land was conveyed to defendant Gydeson.

H. Dunseth testified that after Florence Robinson and Charles M. Watson returned to Houston, about the last of October or first of November, 1916, he saw Watson and had a conversation with him; that in this conversation Watson told him that Goose Creek had had such a black eye they had talked

to other people in regard to the matter; and that he and Miss Robinson did not feel like the property was worth the money, and for that reason they did not conclude the contract.

Florence Robinson testified that she did not return from Dallas after leaving Houston on the day the contract was executed, but that she and Watson went to Kansas City from Dallas, and did not return to Houston until the last of October or first of November.

There was ample evidence to support a finding that appellant Greenameyer had no interest in the contract at the time it was executed, and that, if he ever claimed to be the owner of any such interest, he did not do so until about the time this suit was filed in January, 1917.

Having reached the conclusion that no reversible error was committed, and that the evidence overwhelmingly supports the judgment rendered, the same is affirmed.

Affirmed.