## TIPS v. BARNEBURG et al.    (No. 7407.)

(Court of Civil Appeals of Texas. San Antonio.
Oct. 14, 1925. Rehearing Denied
Nov. 14, 1925.)

1. Judgment ☞256(2)—Judgment by court held error, where it went outside answer to special issue to obtain facts in aid of judgment.

In suit on notes given in exchange of property alleged by defendant to be fraudulent, where evidence of value of property was conflicting, and from special finding that plaintiff's property was worth $36,000 and defendant's $32,000 it was impossible to ascertain whether jury found gross or net value, and measure of damages was difference in net value of property to be determined by jury, a judgment by court of $12,000 for defendant was error, since court had no right to go outside answer to special issue to obtain facts in aid of judgment or to make assumptions regarding it.

2. Fraud ☞11(2) — Opinion as to value of property held not actionable.

Statement of a banker as to value of ice and creamery plant given in exchange for other property, not based on any special knowledge or experience, on which defendant relied, was a mere expression of opinion, not a statement of fact, and does not justify damages for fraudulent misrepresentation, where no relation of trust existed between parties.

3. Fraud ☞64(7)—Whether purchaser relied on own investigation question for jury.

If purchaser relied on own investigation in making exchange of property rather than on fraudulent representations of plaintiff, he cannot recover, and whether he did so rely was for jury.

4. Fraud ☞22(1)—Finding of fraud in exchange of property held not to justify assumption fraud induced exchange.

Finding, by jury, that plaintiff committed fraud in exchange of properties, does not justify assumption, in face of conflicting testimony that such fraud induced exchange, and, if defendant did not exercise ordinary care in exchange of property, doctrine of caveat emptor applies, preventing recovery.

Appeal from District Court, Guadalupe County; Lester Holt, Judge.

Suit by Charles E. Tips against Roy Barneburg and others, with cross-action by the named defendant against plaintiff. Judgment for defendant on cross-action, and plaintiff appeals. Reversed and remanded.

Dibrell & Mosheim, of Seguin, for appellant.
Wurzbach, Wirtz & Weinert, of Seguin, and Davis & Wright, of San Antonio, for appellees.

FLY, C. J. This suit was instituted by appellant against Roy Barneburg, J. R. Kennedy, R. E. Kennedy, H. M. Maud, and Seguin Dairy Products Company, to recover $11,000,

and for a foreclosure of a vendor's lien on certain described property situated in the town of Seguin. Barneburg filed a cross-action against appellant, alleging that the notes sued on were executed by him in an exchange of property between him and appellant, wherein appellant and one Harborth conveyed to appellee Barneburg, who will be designated appellee herein, the property described in the petition, and appellant conveyed to appellee a certain farm in Guadalupe county; the town property being known as the ice house and creamery and the other property as the Guadalupe county farm; that appellee gave a note for $11,000 to appellant secured by a lien on the ice house and creamery and a note for $7,500 secured by a lien on the farm. It was alleged that, in exchange for the property conveyed to him by appellant, appellee conveyed to appellant certain property in Bexar county, near Fratt, "embracing a store, garage, cotton gin, residence, dance hall, acreage, fixtures, and personal property, hereinafter referred to as the Fratt property," and appellant assumed the payment of debts against said property in the sum of $11,000. It was alleged that the reasonable market value of the Fratt property was $35,000; the net value with the incumbrance of the debt being $24,000. It was alleged that the gross value of the farm in Guadalupe county was $11,000; the net value being $2,500. That the creamery property was of less value than the note for $11,000, given by appellee to appellant, and that in exchange for his property worth $24,000 appellee received property of the value of $1,500. Appellee alleged fraud and misrepresentation upon the part of appellant in inducing appellee to make the exchange of the properties; the fraud being specified as follows:

"That the ice house and creamery would pay its running expenses through the winter, and make defendant a living as well; that plaintiff had been unable to supply the demand for ice from the output of said ice house in the summer of 1922, and had been compelled for that reason to ship in several carloads of ice; that there was another ice house in Seguin, but that there was a sufficient demand for all the ice both plants manufactured; that the ice house would make 10 tons of ice per day and run the creamery as well; that the value of the creamery was between $8,000 and $10,000; that the value of the ice house and creamery was $30,000; that the machinery in the ice house was in first-class condition; that the value of a disconnected boiler in the yard was $1,000; that the value of the farm, comprising 210 acres, was $80 per acre; that the farm was one of the best in Guadalupe county, being all good, tillable land; that about 28 acres of the farm on the southeast side of the Lavernia road was as good as the rest of the farm.

"In connection with the foregoing representations relating to the ice house and creamery, defendant would show that the business it had produced and would produce, and profit there-

from, was an important factor influencing defendant to make said exchange.

"Defendant would further show that he had had no previous experience in such business, and was not able to determine himself the value of either the physical properties of the ice house and creamery or its business.

"Defendant would further show that each of the foregoing representations were ·material, and that defendant relied upon each of them and believed the same to be true.

"Defendant would further show that he was a stranger in the town of Seguin; that he was not familiar with the conditions there existing in the ice and creamery business; that at the time of said exchange of property defendant was not provided with funds to carry a business through a winter; and that the plaintiff knew such fact, and knew all the facts set up in the three preceding paragraphs, and with such knowledge he led defendant to believe that he could rely implicitly upon his statements. Plaintiff was on said date and still is a banker and capitalist of Seguin, appeared to be a man of importance, and solid worth in his community, and his position, banking connections, and manner and language influenced this defendant to effect said exchange of property upon said representations without independent investigation.

"Defendant would further allege that plaintiff showed him over the best part of the farm, and led him to believe it was unnecessary for him to go over all the farm, and thereby prevented this defendant from discovering the true worth of said farm before the exchange of property was effected. The greater part of the farm was not in fact as good as the part shown this defendant, and the land on the southeast side of the Lavernia road was not in fact as good as the rest of the farm, but was of poorer quality.

"Defendant would further show that the plaintiff made the representations complained of as facts bearing upon the value of the property this defendant was getting in said exchange of property; that in reality the plaintiff knew at the time he made said representations that they were each and all false; that, if he did not actually know their falsity, he made said representations in reckless disregard of their truth or falsity."

The cause was submitted to a jury on the following special issues:

"Special Issue No. 1. Do you find from the evidence that the plaintiff, Charles E. Tips, committed fraud in the exchange of properties with the defendant Roy Barneburg in any of the particulars alleged in said defendant's cross-action? You will answer this question 'Yes' or 'No' as you find from the evidence the fact to be. If you have answered 'Yes' to the foregoing question, and only in such event, then you will answer the following:

"Special Issue No. 2. What was the value of the property which said defendant Roy Barneburg parted with, in said exchange, at the time the exchange was made? You will answer this question by stating the amount of such value as you find from the evidence the fact to be.

"Special Issue No. 3. What was the value of the property received by said defendant Roy Barneburg, in said exchange at the time the exchange was made?"

To the first issue the jury answered in the affirmative, and in answer to the other issues found the property received by appellant was of the value of $36,500 and that received by appellee was of the value of $32,000, and the court rendered judgment in favor of appellee for $12,000.

The evidence of appellee showed that the Fratt property was of the reasonable market value of about $40,000. He gave the value of the 9½ acres of land conveyed by him at $500 an acre, or $4,750, his residence at $3,500, the dance hall at $4,000, storehouse and fixtures at $5,000, the gin and building at $18,000, the well $1,000, the garage $1,000, gasoline pump $350, air tank $85, blacksmith shop $600, light plant $500, butcher shop $200. There was also a valuable seedhouse. Tips swore that it was agreed between him and appellee that the value of the respective properties was $40,000; that the ice plant cost over $30,000, and the farm sold for $15,000, which would be at least $45,000.

[1] The testimony of the appellant and appellee as to values is given to show that the evidence was conflicting, although it is recited in the judgment that it was "uncontradicted," and it is impossible to ascertain from the verdict whether the · jury found the gross value or the net value of the properties. The court did not require the jury to find the gross value or the value with the debts deducted. The question was, "What was the value" of the two properties at the time of the exchange. The court assumed that the jury found the gross values of the properties, but it was mere assumption. The measure of damages rested on the difference between the net values of the properties, and it was a question of fact to be determined by the jury, from conflicting evidence. The jury did not determine it, and it was determined by the court. The verdict should have been definite and certain and have left nothing to surmise or guess. The court had no right or authority to go outside the answer to the special issue to obtain facts in aid of the judgment. Newbolt v. Lancaster, 83 Tex. 271, 18 S. W. 740. In order to leave no doubt that the court went outside of and beyond the answer to the special issue, the judgment recites that it considered the evidence to support the verdict. That evidence being sharply conflicting, this court will not sustain a judgment so obtained.

As said by the Supreme Court in Moore v. Moore, 67 Tex. 293, 3 S. W. 284: "A special verdict is defective, and must be set aside, which does not find all the facts put in issue by the pleadings", and the question of the net value of the properties has not been passed on by the jury. This view is also sustained in Pickrell v. Petroleum Co. (Tex. Civ. App.) 231 S. W. 412, where the answer to a special issue as to values in a case of fraud was not

clear and explicit, and yet was made the basis of a judgment. Speculation as to the meaning of a verdict by a court should never be indulged in.

[2] The plea for damages based on an opinion by appellant that the ice and creamery plant would pay expenses during the winter would not justify damages. It was necessarily merely an opinion and it is not alleged that it was based on an experience upon which appellee relied. He alleges that he relied upon it, not because appellant was an experienced ice manufacturer, but because he was "a banker and capitalist of Seguin, appeared to be a man of importance, and solid worth in the community." Because Henry Ford and John D. Rockefeller have untold millions of money would not justify a man in acting upon their representations as to ice factories. One would doubtless know all about cheap automobiles and the other about oil and bonds and securities, but that would not mean that either would be an authority on ice factories, even though each may have owned one. If, however, the facts showed that appellant had operated the plant and knew that it would not pay no matter how skillfully operated, it might evidence fraud on his part in making the representations. Care should be exercised, however, by the buyer in regard to predictions as to what a property would produce, and he should always remember the fact that extravagance in regard to values of properties sought to be sold or exchanged is the rule rather than exception, and reason and ordinary experience would dictate to a prospective buyer to receive such representations with care and due inquiry into their truth or falsity. No relation of trust or confidence existed between the parties, and appellee could not have relied on the representations as to the property on that ground. They seemed to have dealt with each other at arm's length. If appellant assumed to have special knowledge of the value of the property, and appellee was ignorant of such value and relied entirely on the good faith of appellant, it would amount to the statement of a fact. And in case of such absolute reliance on the opinion which would amount to the statement of a fact, no independent investigation upon the part of the buyer would be necessary. In other words, if the statement as to value was a mere expression of opinion, the one expressing such opinion would not be liable no matter how false or erroneous the opinion might be, but "wherever a party states a matter which might otherwise be only an opinion, and does not state it as a mere expression of his opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act

upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation." 2 Pom. Eq. Jur. (4th Ed.) § 878, p. 1815; Newton v. Ganss, 7 Tex. Civ. App. 90, 26 S. W. 81; Riggins v. Trickey, 46 Tex. Civ. App. 569, 102 S. W. 918. The last-cited case has often been cited with approval, was approved by the Supreme Court, and embodies the law as to misrepresentations as to values.

[3] The facts tended to show that means for an independent investigation by appellee was afforded him and that he availed himself of such means and made an independent investigation as to the values of the property and its earning capacity, and under such circumstances it was a question of fact to be determined by a jury as to whether he did not rely on his own investigation rather than the representations. The jury should have been permitted to pass on this question; in fact it was a matter upon which a proper decision of the case depended. Appellant may have made fraudulent representations to appellee, but if those representations were not relied upon by appellee, and he acted upon knowledge obtained by an investigation, he cannot recover.

[4] The jury only found that appellant "committed fraud in the exchange of properties," but it is not found that such fraud induced the exchange of properties. The court assumed that it did in the face of conflicting testimony. Courts will not relieve a party from the effects of his own indiscretion and improvident and unreasonable negligence in the purchase or exchange of property. As said in Custard v. Custard, 25 Tex. Supp. 49:

"The plaintiff may have acted very indiscreetly and improvidently in making the disposition of his property against which he now seeks to be relieved; but it appears to be a case of improvidence simply, which, in itself, is not a ground for relief in equity."

Too often men make trades and enter into foolish contracts on their mistaken judgment and then raise the cry of fraud to relieve them of the consequences, but the courts of the country will not assume the guardianship of the affairs of such men, nor encourage such claims for damages or a cancellation of the contracts. The law does not place a premium on negligence or unreasonable credulity. Prudence and diligence should be exercised in the execution of contracts, and in the purchase or exchange of property the law will apply the doctrine of caveat emptor when there is a want of ordinary care shown by the purchaser.

For the errors indicated the judgment will be reversed, and the cause remanded.