**BARNSDALL REFINING CORPORATION
v. BIRNAMWOOD OIL CO.
No. 6273.**

Circuit Court of Appeals, Seventh Circuit.
Nov. 30, 1937.

Francis E. McGovern, of Milwaukee, Wis. (Harry L. Potter, of Madison, Wis., and McGovern, Curtis & Devos, of Milwaukee, Wis., of counsel), for appellant.

M. D. Kirk, of Tulsa, Okl., and Clark M. Robertson and Howard R. Johnson, both of Milwaukee, Wis., for appellee.

.Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment in plaintiff's favor for the balance due for gasoline and oil purchased by defendant from plaintiff and asserts error in the order sustaining a demurrer to the answer and counterclaim of defendant.

Plaintiff sued upon a contract for the purchase of gasoline and oil covering a period of five years, alleged a balance unpaid in excess of $6,000 and sought recovery of the same. The second amended answer of defendant averred that the agents of plaintiff's assignor (who, for the purpose of this appeal, is the same as plaintiff) approached defendant and procured the contract by fraudulent inducements, namely, false representations that the prices fixed in the contract were equally as low as those in any other contract between plaintiff and other jobbers of gasoline in Wisconsin and that the "marginal protection" provided therein was as advantageous as in any other such contract; that the agents were acting within the scope of their apparent authority; that the representations were false in that at the time they were made plaintiff had a contract with another jobber, selling gasoline to it at one-half cent per gallon less than the price fixed in the contract sued on and containing a provision for marginal protection much more favorable to the jobber than that in the contract here involved; that, by agreement between plaintiff and the said jobber, these discriminating prices and provisions were to be kept secret by both parties; that plaintiff authorized and directed its agents to solicit and negotiate the contract with defendant and others similar thereto and to state to the parties from whom contracts were to be solicited that the prices in all contracts were exactly the same as those in defendant's contract and that no discrimination in prices or terms had been made to any jobber of its product in Wisconsin; that the aforesaid fraudulent misrepresentations of the agents were made pursuant to directions given by plaintiff to its agents; that in approving and signing the contract plain-

tiff well knew that its agents, in inducing and negotiating the contract with the defendant, had made the statements hereinbefore set forth; that plaintiff approved of and accepted the benefits of said contract with full knowledge of all the facts and of the statements of its agents so made inducing and resulting in the execution of the contract; that defendant relied upon the misrepresentations and in reliance thereon was induced to and did execute the contract and that defendant did not discover the fraud until after the delivery of all the oil and gasoline purchased. These facts, set out in great detail, were pleaded in bar of the action for the balance due and as a counterclaim for the recovery of damages resulting from the fraudulent statements in a sum exceeding $20,000.

■ The court sustained the demurrer thereto on the ground that the pleading showed upon its face that the agents had no authority to execute the contract or to make any representations concerning the same, because of certain provisions of the contract as follows: "This contract contains the entire agreement between the parties hereto, there being no oral promises, agreements, or warranties affecting same. * * * The contract shall not be valid or effective until approved by a Vice-President of the Treasurer of the Seller." The court believed that these provisions brought to defendant complete notice of the resulting limitation upon the agents' power. Plaintiff now insists that such was the legal effect of the provisions and that defendant, in the face of notice of this limited power, cannot claim that there was any authority within the scope of which the agents could bind their principals by fraudulent misrepresentation as to something included within the contract. It relies upon Barnebey v. Barron G. Collier, Inc. (C.C.A.) 65 F.2d 864, 867, where the answer and counterclaim were devoid of averment other than that the soliciting agents made the misrepresentations complained of. There the court said: "Defendants were dealing with an agent whose authority was very narrowly limited. The contract signed by defendants contained specific provision * * * that it contained all the agreements and representations of the parties, 'and no representation or promise not set forth herein shall affect the obligations of either party hereunder.' * * * They had before them the clear, unmistakable, and reiterated warning that no statement, agreement, understanding, or representation, made verbally or in writing, not inserted in the contract itself, would be recognized or accepted by the plaintiff. Fitch [the agent] was a mere soliciting agent, barren of all authority to do more than solicit the advertising contract."

To the same effect is J. B. Colt Co. v. Odom, 136 Miss. 651, 101 So. 853, 855, where it was said:

"Ordinarily, where an agent has authority to execute a complete contract for its principal, and does so, it may be avoided if the agent made fraudulent representations to induce the signature or execution of the contract. But where the contract shows on its face that it is not to be executed by the agent for the company, but is to be sent to the company to be approved by some officer or manager of the company, and the purchaser represents in his contract that no representations have been made to him other than that contained in the contract, the company has a right to rely upon such stipulations by the purchaser.

"Every person has a constitutional right to limit the powers of his or its agents, and if it reserves a right to pass upon the contract as sent to it, and the purchaser represents in such contract that no outside representations have been made, and the contract contains all the agreements of the parties, such purchaser will not thereafter be permitted to show statements made by the agent to him not embraced in the contract, where such person is able to read and write, and to note the terms of the contract in writing before he signs it, and his failure to read it will not exonerate him from the consequences resulting from such failure to read. He cannot represent to the company that no representations have been made by the agent to produce the execution of the contract, and thereafter repudiate it on the ground that the agent misled him."

We are of the opinion that the contract contained sufficient notice of the limited authority of the agents and that defendant, bound by this notice, cannot claim that he was misled by the fraud of parties whom he was bound to know had no authority to mislead him.

The reason for the rule lies in the fact that, as the court commented in Tips v. Barneburg (Tex.Civ.App.) 276 S.W. 932

and Id. (Tex.Civ.App.) 11 S.W.2d 187, too often men enter into foolish contracts on their mistaken judgment and then raise the cry of fraud to relieve them of the consequences. But courts will not assume the guardianship of the affairs and actions of such men, or encourage such claims for damages, for he who shuts his eyes to that which is clearly apparent may not complain that he has been defrauded. With these principles we are in thorough accord; and we make this statement because, in view of our conclusions in this matter, a new trial will be necessitated.

But the affirmative averments of the answer and of the counterclaim far transcend allegations of fraud upon the part of the agents alone. They charge specifically that plaintiff authorized its agents to make the statements; that it knew that they were made and, with that knowledge, accepted the contract and enjoyed its benefits. The language is such that the court could not properly dispose of the matter upon demurrer; for the pleading charges the active participation, indeed, the active direction of the fraudulent acts complained of and the enjoyment of the results thereof, with full knowledge of what is alleged to have been done, of the fraud claimed to have been perpetrated. To such averments, the provision that all of the representations made were included in the contract and that it would be executed at Tulsa by the officers of the corporation is no answer, for the fraud complained of is of a character justifying an action in behalf of defendant for the damages thus caused by the company. This is in accord with the general rule "that any false representation of a material fact, made with knowledge of its falsity and with intent that it shall be acted on by another in entering into a contract, and which is so acted on, constitutes fraud and will entitle the party deceived thereby to avoid the contract or to maintain an action for the damages sustained." The so-called parol evidence rule has no application to extrinsic evidence when employed as a basis of attack upon the validity of the contract.

In view of the allegations of plaintiff's actual direction of and participation in the fraud, defendant is entitled to a trial. Accordingly the judgment is reversed, with directions to proceed in a manner not inconsistent with this opinion.