## SOUTHWESTERN PORTLAND CEMENT CO. v. CHALLEN. (No. 777.)

(Court of Civil Appeals of Texas. El Paso. Jan. 10, 1918. Rehearing Denied Jan. 31, 1918.)

1. MASTER AND SERVANT ☞270(10)—NEGLIGENCE—EVIDENCE—DUE CARE.

Where in an action for the injury of a servant by an explosion of coal dust a witness was asked, "Can you get rid of that carbon in the air so there will be nothing in the air to explode?" to which witness answered: "Well, theoretically a device could be possible in which no explosion would occur. Practically I have never attempted it"—the question and answer were admissible that the jury might have all the facts before it to be considered and weighed in determining whether defendant used due care in providing a safe place for plaintiff to work.

2. TRIAL ☞244(4) — INSTRUCTIONS — UNDUE PROMINENCE TO PARTICULAR MATTERS.

In an action for injury to a servant by explosion of coal dust, the repetition of a phrase in several questions to jury examined, and held not to have laid such undue stress upon the mere creation of coal dust as to suggest to the jury that the court believed such to be negligence on the part of the master, and for which he would be liable.

3. APPEAL AND ERROR ☞1070(2)—HARMLESS ERROR—FINDINGS.

Errors in the findings of a jury on particular issues do not require a reversal, where the findings on other issues are sufficient to support the verdict.

4. TRIAL ☞194(19)—SPECIAL ISSUES—COMMENT ON WEIGHT OF EVIDENCE—"ACCUMULATE."

In a special issue "Do you find * * * that defendant allowed fine dust and coal to escape from its conveyors and elevators and accumulate in the coalhouse?" etc., the word "accumulate" was used in the sense of allowing the dust to "remain," and was not a comment on the weight of the evidence, suggesting that the mere presence of dust created a dangerous condition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accumulate.]

5. APPEAL AND ERROR ☞930(3)—PRESUMPTION—SPECIAL ISSUES—FINDINGS.

Where, in a case submitted on special issues, the evidence is overwhelming that plaintiff has suffered the injury alleged, it will be presumed that this issue was found by the court for plaintiff.

6. TRIAL ☞351(2) — SPECIAL ISSUES — REQUESTS.

If the defendant wanted the special issue as to the injury suffered by plaintiff submitted to the jury, it was incumbent upon it to so request in writing.

7. TRIAL ☞252(11) — INSTRUCTIONS — CONTRIBUTORY NEGLIGENCE — CONFORMITY TO EVIDENCE.

A charge that it was the duty of the servant to have acquainted himself with the general duties of his position examined, and held improper where there was no evidence as to any neglect of his duties; he being an electrician and under no duty to guard the premises against explosion.

8. MASTER AND SERVANT ☞295(1)—ASSUMPTION OF RISK—INSTRUCTIONS.

A statement in a charge that a servant assumed the risks and dangers usually and naturally incident to his employment, but which ignores the rule that he does not assume risks due to the master's negligence, is improper.

9. TRIAL ☞252(11) — INSTRUCTIONS — CONFORMITY TO EVIDENCE.

An instruction that an injured servant assumed the risks of such defects as were open to his inspection was improper, where the evidence showed that the servant did not know such defects would cause an explosion.

10. MASTER AND SERVANT ☞295(7) — INSTRUCTIONS—DUTIES IMPOSED UPON INJURED SERVANT.

An instruction that conveys the idea that the injured servant was bound to inspect and search for negligent acts and omissions of the master is improper.

11. TRIAL ☞253(4) — INSTRUCTIONS — IGNORING ISSUES.

A charge that if the jury believed that the plaintiff, servant, knew of the defects in the machinery and appliances and failed to notify the master and continued in the service, the law would presume he assumed risks incident to the work held properly refused, because it ignored defendant's negligence in furnishing a dangerous place to work, the danger being unknown to plaintiff.

12. MASTER AND SERVANT ☞295(8)—ASSUMPTION OF RISKS—OBVIOUS OR LATENT DEFECTS.

An instruction offered by master, defendant, that makes knowledge of patent defects a defense, where the danger therefrom was latent and beyond the knowledge of the injured servant, was properly refused.

13. TRIAL ☞215—INSPECTION—SPECIAL ISSUES.

A statement in charge that if plaintiff assumed the risks, he could not recover for in-

juries was properly refused, where the case was being submitted on special issues.

14. DAMAGES &#9902;134(3)—EXCESSIVE—LOSS OF EARNING CAPACITY.

Where plaintiff was horribly burned, had suffered and still suffers intense pain, is in a permanently helpless and deplorable condition, having almost completely lost the use of his hands and has lost his earning capacity, a verdict in the sum of $20,000 is not excessive.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by G. C. Challen against the Southwestern Portland Cement Company. Judgment for plaintiff, defendant appeals. Affirmed.

Burges & Burges and S. P. Weisiger, all of El Paso, for appellant. Lea, McGrady & Thomason, of El Paso, for appellee.

### Statement of Case.

HIGGINS, J. Appellant prosecutes this appeal from a judgment in the sum of $20,000 rendered against it in favor of appellee, Challen, on account of damages arising from personal injuries sustained by the latter. Appellant operated a plant for the manufacture of cement, and in the operation thereof had more than five people employed. Challen was employed as an electrician, and in the discharge of his duties had occasion to go into the coalhouse of the plant. The room in which he was working and a tunnel connected therewith had an accumulation of coal dust therein which became ignited in some way. This caused an explosion, in consequence whereof Challen was very severely burned and injured. The case was submitted to a jury upon special issues. These issues and answers are as follows:

"No. 1. Do you find from the preponderance of the evidence that defendant allowed fine dust and fine coal to escape from its conveyors and elevators and accumulate in the coalhouse and the tunnel thereof, and on the floors thereof, in piles and quantities? Answer: Yes.

"No. 2. If you answer Yes to question No. 1, then answer: Was it negligence on the part of the defendant to so allow such coal, if any, to escape and collect, if it did so? Answer: Yes.

"No. 3. If you answer Yes to questions Nos. 1 and 2, then answer: Was such negligence, if any, of the defendant, a proximate cause of plaintiff's injury? Answer: Yes.

"No. 4. Do you find the defendant permitted its containers and conveyors to become and remain in bad repair, at the time complained of, by having holes in them, or their joints and connections loose? Answer: Yes.

"No. 5. If you answer Yes to question No. 4, then answer: Was defendant negligent in permitting the use of such containers and conveyors to be in the manner same were used? Answer: Yes.

"No. 6. If you answer Yes to questions 4 and 5, then answer: Was such negligence, if any, a proximate cause of plaintiff's injury? Answer: Yes.

"No. 7. Do you find that defendant allowed quantities of ground coal to escape from its grinding mill and remain without being removed from its tunnel, coalhouse, and premises connected therewith? Answer: Yes.

"No. 8. If you have answered Yes to question No. 7, then answer: Was defendant negligent in so permitting such coal dust in its tunnels and coalhouse, if it did so? Answer: Yes.

"No. 9. If you have answered Yes to questions 7 and 8, then answer: Was such negligence of the defendant, if any, a proximate cause of plaintiff's injury? Answer: Yes.

"No. 10. Do you find that the defendant failed to exercise ordinary care to sufficiently ventilate its tunnel and coal building to make them reasonably safe? Answer: Yes.

"No. 11. If you have answered Yes to question No. 10, then answer: Was the defendant negligent in failing to exercise ordinary care to ventilate the said premises, if it did so fail? Answer: Yes.

"No. 12. If you have answered Yes to questions 10 and 11, then answer: Was such negligence, if any, on the part of the defendant, a proximate cause of plaintiff's injury? Answer: Yes.

"No. 13. Did the defendant cement company exercise ordinary care to furnish the plaintiff a reasonably safe place and reasonably safe appliances in which and with which to perform the duties of his employment to defendant? Answer: No.

"No. 14. If you answer No to the preceding question, then answer: Was such failure, if any, a proximate cause of plaintiff's injury? Answer: Yes.

"No. 15. Do you find that the explosion at defendant's cement plant was an unavoidable accident? Answer: No.

"No. 16. What sum do you find, if paid now, would reasonably compensate plaintiff for the injuries sustained by him; and, in estimating his damages, if any, you will take into consideration the mental and physical pain heretofore suffered by him, and if you believe that he will suffer mental and physical pain in the future, you may take that into consideration in estimating his damages. You may also consider the time heretofore lost by him, and if you believe that his ability to labor and earn money in the future has been diminished, you may take that into consideration in estimating his damages? Answer: $20,000."

### Opinion.

[1] Plaintiff propounded to his witness Dawson the question: "Can you get rid of that carbon in the air, so there will be nothing in the air to explode?" The witness answered: "Well, theoretically, a device could be possible in which no explosion could occur. Practically, I have never attempted it." It is objected that the question and its answer imposed a greater burden than the law requires, of defendant, in discharging its duty to provide a safe working place. The record discloses that in the manufacture of cement appellant ground coal into fine dust, and as grounds of negligence in failing to provide a safe working place, it was alleged that this dust was allowed to accumulate in the room where plaintiff was working and in the tunnel connected therewith. This dust accumulated in piles on the floor and permeated the atmosphere. The testimony shows that this created a highly explosive condition; that a spark would cause an explosion, or such explosion might be caused by the spontaneous heating of a pile of dust to the point of ignition. The question and answer objected to was admissible in order that the jury might

have all of the facts before it to be considered and weighed by it in determining whether the defendant had used due care in providing a safe place for plaintiff to work. Railway Co. v. Pitts, 42 S. W. 255; Railway Co. v. Walker, 70 Tex. 126, 7 S. W. 831, 8 Am. St. Rep. 582; 3 Labatt on M. & S. (2d Ed.) par. 932.

Appellant insists that the action of the Supreme Court in granting a writ of error in the Moreno Case, 181 S. W. 221, is decisive of its contention that the admission of this testimony was error. In granting the writ that court has noted: "We think the seventh paragraph of the charge erroneous." Such charge may be erroneous, but it would not necessarily follow that the evidence considered was inadmissible upon the question of due care. Even if the answer was inadmissible, its tendency, it would seem, was not harmful, but rather helpful to defendant.

Furthermore, the question and answer related to the elimination of the carbon floating in the air and the prevention of its ignition. In response to issues 1, 2, and 3, the jury has found that defendant negligently allowed the coal dust to accumulate on the floors of the coalhouse and tunnel, and that this was a proximate cause of the injury. The evidence had no bearing upon the negligent act of allowing the dust to so accumulate, and this could have had no influence on this finding. If inadmissible, it therefore is not ground for reversal.

[2] The second assignment is that the court erred in refusing to eliminate from its charge issues 1, 2, and 3, because the repeated use of the phrase in questions Nos. 1 and 8, "Do you find from a preponderance of the evidence that defendant allowed fine dust and fine coal to escape from its conveyors and elevators and accumulate in the coalhouse and tunnel thereof?" together with questions Nos. 2 and 3, 8 and 9, which were hypothetically based upon an affirmative answer thereto, laid undue stress upon the mere creation of dust, and suggested to the jury that the court was of the opinion that the mere creation of dust was negligence for which defendant would be liable.

[3] We do not regard the objection well taken, but if it be, the same affects and the error relates only to the issues indicated. The findings upon other issues support the judgment, and any error in the particular urged to issues 1, 2, and 3 would not require a reversal. Steger v. Barrett, 58 Tex. Civ. App. 331, 124 S. W. 174; O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 899; Railway Co. v. Eddleman, 175 S. W. 775.

[4] Under the third assignment it is further objected that the submission of question No. 1 without inserting the words "and remain" after the word "accumulate" was sufficient to suggest to the jury that the mere presence of dust was in itself sufficient to create a dangerous condition, though not permitted to remain during the period of oxidation, and such submission was a comment upon the weight of the evidence. We do not regard the form of the question as suggestive that the mere presence of dust was in itself sufficient to create a dangerous condition, though not permitted to remain during the period of oxidation. The word "accumulate" was clearly used in the sense of allowing the dust to "remain," and the jury must have so understood it. Such form of submission was not upon the weight of the evidence, and if it was, the error, for reasons indicated above, is not reversible. What has been said likewise disposes of the second proposition subjoined to the third assignment.

[5, 6] Under the fourth assignment, it is complained that the court erred in rendering judgment against defendant because there is no finding by the jury that plaintiff has suffered the injuries complained of, and no issue in respect thereto was submitted to the jury. The evidence is overwhelming that plaintiff has sustained injuries as alleged, and it will be presumed that this issue was found by the court in favor of appellee. If appellant desired the same to be submitted to the jury, it was incumbent upon it to request in writing the submission thereof. Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132.

[7] Error is assigned to the refusal to submit the following charge:

"At the request of the defendant, you are instructed that it was the duty of the plaintiff, as an employé of defendant, to have acquainted himself with the general duties of his position; and he assumed at his peril the risks and dangers usually and naturally incident to his employment as such employé, including the risks and dangers, if any, of such defects, if any, in the machinery located in and upon the premises where he was employed to work, as were reasonably open to his ordinary inspection and observation, under the circumstances. And if you believe from the testimony that the plaintiff knew of such defects, if any, as existed in the machinery and appliances shown to have been in use on defendant's premises at the time of the accident, and that he failed to notify defendant of the dangers of same, but, without objection or protest, continued in the service of defendant, the law would presume that he assumed the risks incident to the work in and about said premises under the conditions then existing, and he could not recover in this case. Now, bearing in mind the above instruction, the court submits to you the following questions:

"(1) Did or did not the plaintiff know of the defects, if any, in the screw conveyor or elevator which he alleges existed at the time and prior to his injury, or could he have known of same by reasonable and ordinary inspection or observation, under the circumstances? Answer this Yes or No.

"(2) If you have answered the foregoing question in the affirmative, then the court submits the following question: Did or did not the plaintiff, having such knowledge, continue, without objection or protest, in the service of the defendant, in or about the premises, where said defects, if any, existed? Answer this question Yes or No."

Aside from any question as to the constitutionality of the act of the Thirty-Third Legislature, c. 179, Reg. Sess. (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h to 5246zzzz), abolishing the defense of assumed risk, this

charge was properly refused for the following reasons:

1. The first part of the charge to the effect that it was the duty of plaintiff to have acquainted himself with the general duties of his position was improper, because there was no evidence or issue in the case as to any neglect of his duties; he being an electrician, and it not being claimed that it was his duty to guard the premises against explosions. Further, if such were an issue in the case, plaintiff would only be required to use ordinary care as distinguished from becoming a guarantor of acquiring absolute knowledge.

[8] 2. The statement in the charge that plaintiff assumed the risk and dangers usually and naturally incident to his employment ignores the rule that he did not assume risks and dangers due to the master's negligence.

[9] 3. The statement that plaintiff assumed the risks and dangers of such defects in the machinery as were open to his inspection was improper, because it appeared from the evidence that he did not know that such defects would cause or lead to any explosion, thus ignoring plaintiff's appreciation of the danger arising from the defect.

[10] 4. The charge was improper, in that it conveys the idea that plaintiff was bound by such negligence of the master as was open to his inspection and observation, thereby implying that it was his duty to inspect and search for negligent acts and omissions.

[11, 12] 5. The requested charge was properly refused for the reason that the following part thereof was error, to wit:

"And if you believe from the testimony that the plaintiff knew of such defects, if any, as existed in the machinery and appliances shown to have been in use on defendant's premises at the time of the accident, and that he failed to notify defendant of the dangers of same, but, without objection or protest, continued in the service of defendant, the law would presume that he assumed the risks incident to the work in and about said premises under the conditions then existing, and he could not recover in this case"

—because it ignored defendant's negligence in furnishing dangerous premises, due to the accumulation of coal dust in the tunnel, unknown to plaintiff, and because it made a knowledge by plaintiff of defects a defense, even though plaintiff did not know of the danger likely to arise from such defects, which is not the law in a case like this, where the danger is latent, though the defect be patent, and because it excluded plaintiff's right to recover for defects and dangers on the premises unknown to him.

[13] 6. The statement in the charge that if plaintiff assumed the risk he could not recover was improper in view of the fact that the case was being submitted upon special issues. Moore v. Coleman, 195 S. W. 212; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132; Express Co. v. Rudman, 145 S. W. 268.

But if the charge had been given and the issues therein had been found against plaintiff, still, he would have been entitled to a judgment on the other findings of the jury not in conflict therewith, viz. that defendant was negligent, proximately causing the injuries: (1) In allowing coal dust to accumulate in the tunnel and coalhouse, thereby rendering the premises unsafe; (2) in failing to use ordinary care to furnish plaintiff a safe place to work; (3) in failing to use ordinary care to ventilate the building. Therefore the ruling on the requested charge is not material; it only relating to risks which plaintiff might have assumed because of defects in the appliances and in the machinery and not as to dangerous premises.

[14] It is also assigned as error that the verdict and judgment is excessive.

The evidence discloses that plaintiff was horribly burned. He is in a permanently helpless and deplorable condition. He has almost completely lost the use of his hands. His earning capacity is destroyed. He has suffered and still suffers intense pain. We regard the verdict as being in no wise excessive.

Affirmed.

WALTHALL, J., did not sit, being absent on committee of Judges assisting the Supreme Court.