**FRESNOS LAND & IRRIGATION CO. et al. v. BOX et al. (No. 6586.)**

(Court of Civil Appeals of Texas. San Antonio. June 8, 1921. Rehearing Denied June 29, 1921.)

1. **Continuance &⟶26(3)—Denied for absence of witness, diligence not being shown.**

There is no abuse of discretion in denying continuance for absence of witness; there having been no proper and sufficient diligence to secure his attendance or deposition.

2. **Appeal and error &⟶1050(1)—Admission of evidence not ground of complaint, harm not being shown.**

Complaint of admission of testimony is not available where harm therefrom is not shown.

3. **Trial &⟶351(2)—Party desiring submission of special issue should offer one.**

One desiring submission of a special issue should prepare and offer one.

4. **Waters and water courses &⟶261—Irrigation contract exemption from liability held inapplicable to laterals to be constructed.**

Exemption of water company in contract for furnishing water for irrigation through laterals to be constructed by it in case of breaking down of machinery or laterals, being in the part of the contract referring to existing and completed plant, does not relieve it from liability for damages from insufficient supply merely because the laterals it constructed under the contract were defective.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by E. D. Box against the Fresnos Land & Irrigation Company and another, others intervening. From an adverse judgment, defendants appeal. Affirmed.

Graham, Jones & Williams, of Brownsville, for appellants.

Seabury, George & Taylor, of Brownsville, for appellees.

COBBS, J. E. D. Box, appellee, sued appellants for damages growing out of the breach of alleged written contracts. Fresnos Land

& Irrigation Company leased to appellee Block No. 184, containing 23.37 acres of land, and 9.29 acres of land off of the east end of block No. 187, aggregating 32.66 acres in Cameron county. The contract began October 1, 1918, and ended October 1, 1919. By the terms of the contract appellee became entitled to three-fourths of the crops grown and to be grown for the year 1919, and it became the duty of Fresnos Land & Irrigation Company to furnish to plaintiff water sufficient to properly irrigate the lands so that the crops would grow thereupon. The water to irrigate with was to be furnished by the other appellant, Rio Grande Canal Company, sued herein as a party jointly engaged in the undertaking, the contract being made through Scott, the president of both companies. Appellee Box alleged that he carefully and properly prepared the 32.66 acres in the early part of the year 1919 for the purpose of planting same in cotton, and on or about the 4th of March, 1919, planted said land in cotton of good well-selected seed, and advised Fresnos Land & Irrigation Company of the planting, both prior and subsequent thereto, and demanded to be furnished with water through the lateral prepared, and to be prepared, by appellee to irrigate the cotton, which it failed and refused to do within a reasonable time thereafter, and the cotton reached only a partial stand. It was also alleged that the cotton seed sprouted in the ground from natural moisture, and would have, if watered, come up in a good and perfect stand; whereas only about one-eighth of the stand came up above the ground, and for lack of moisture, or failure to supply water to the ground and crop, it did not have a good stand, but if properly watered it would have had and would have grown and would have produced 20 bales of cotton more than it did make; that the bales would have averaged 500 pounds of lint cotton in weight, would have been worth in the market at time of its gathering the sum of 30 cents per pound, and the seed produced would have been 10 tons, worth $61 per ton; that the cost of harvesting and marketing would not exceed $20 per bale, cost of growing would not exceed $8 per bale, leaving a net loss of $3,050.00, three-fourths of which being plaintiff's made a total loss to him of $2,-287.50, for which suit was brought.

The cause of action against Rio Grande Canal Company (an alleged irrigation corporation and common carrier for hire) is that at the time of the execution of the contract with Fresnos Land & Irrigation Company (an alleged landholding company) it likewise became a party to said contract, and agreed to furnish water for the proper irrigation of said land and said cotton in accordance with the contract, but utterly failed to furnish water sufficient to irrigate the land within time to prevent the loss of said cotton.

The canal company was a corporation organized under the laws of Texas to conduct water from the Rio Grande river, the source of its supply, as a common carrier to serve the public, and especially the lands of appellees, designated by said canal company as under its system, and there was an abundance of water from its source of supply not contracted to other parties, with which appellee's lands could have been irrigated, but appellants breached the agreement and negligently failed and refused to construct to said land any sufficient lateral or canal from its main canal to irrigate said land, and hence made parties to the suit.

The defenses as pleaded by appellants were general demurrer and general denial, and appellant Rio Grande Canal Company denied under oath that it executed the contract sued on, or that it was in any way a party thereto, and pleaded specially it never agreed to furnish water for irrigation except on conditions provided in its general water contract with Fresnos Land & Irrigation Company, and at all times stood able and willing to comply with the terms of that contract.

Fresnos Land & Irrigation Company brought A. N. Tandy in as a defendant, alleging it sold Tandy some of the lands across which it had to construct canals in order to enable Rio Grande Canal Company to reach appellee Box's lands, as a part of the consideration for sale to Tandy, who agreed to construct the canal across the lands purchased by him, which he failed to do within the time agreed upon, and if appellee Box suffered any injury it was caused by Tandy, and prayed to recover over against Tandy if appellee Box recovered. Tandy filed appropriate defenses. By agreement of all parties Pedro Cortez intervened in the suit, but made no claim, and it was agreed that whatever rights he might have should be recovered by Box; this agreement disposed of the intervener's case. Fresnos Land & Irrigation Company filed a motion for a continuance, which was overruled.

The case was tried with a jury upon special issues, which having been duly answered, the court entered a judgment that interveners Cortez and Tandy go hence with their costs and judgment in favor of appellee Box against Fresnos Land & Irrigation Company and against the Rio Grande Canal Company jointly the sum of $778, with 6 per cent. interest per annum thereon from the 1st day of October, 1919.

[1] The first assignment complains that the court erred in not granting a continuance to secure the testimony of John G. Fernandez, a witness for appellants. He was an officer in appellant's company. An inspection of the record discloses that appellant pur-

sued no proper and sufficient diligence to secure the attendance of the witness or to take his deposition, and the court did not abuse its discretion in overruling the application. The assignment is overruled.

Appellant's second assignment of error embraces his first, second, third, fourth, eleventh, and seventeenth assignments, all under one assignment, with as many several different propositions thereunder. The appellee urges us not to consider this assignment, as it is violative of rule 29 of this court.

The first proposition under this multifarious assignment is that plaintiff failed to allege that the defendant Fresnos Land & Irrigation Company was guilty of any negligence tending to produce the injury because it was relieved by a clause in the contract from any damages not involving its negligence. The contracts were attached to and made a part of the pleading. The petition and contract together showed that appellants were acting together in this contract, both receiving common benefits, and in which it was agreed that appellee would be furnished water by February 1, 1919. A claim was set up in this suit by the canal company for the price of water furnished to and recovered against appellee for $128, which was credited on the amount of damages recovered by appellee. The judgment of the court recites the gross value of the cotton and seed that would have been raised was the sum or value of $1,416. Deducting three-fourths of the gross value, less the cost of gathering, harvesting, ginning, and marketing, found by the jury, the court ascertains to be the sum of $906, appellees' share. The court further found Rio Grande Canal Company is entitled to recover from appellee Box the sum of $128, water rent set off against appellants, leaving the amount of judgment $778, recovered with interest as above shown. The pleading was entirely sufficient to support the recovery, and the assignment is overruled. There is no reason why the two corporations, the land company and the irrigation company, as they did, could not jointly agree with a water-taker, for a sufficient and valuable consideration, the one to furnish the land, the one to cultivate, and the other to furnish the water; it being to and in the mutual interest of all the parties in respect thereto. Granger v. Kisli, 139 S. W. 1004. This assignment is overruled.

We overrule the third assignment, which complains that the court should have given the requested instruction for a verdict. There is no merit in this assignment. Under the state of the evidence the trial court would have erred had he so done, as there were sufficient facts introduced to take the case to the jury.

The fourth, the eleventh, and seventeenth assignments do not clearly state what the errors are, but send us to bills of exception Nos. 5 and 12 to hunt out in the record to find what they are. And the seventeenth is too general to understand at all, as it is complaining of the judgment without telling us the distinct grounds. The proposed propositions and statements do not assist the court. Nevertheless, we have considered each, find no merit disclosed, and overrule them.

Appellants' third assignment of error includes here the fifth, seventh, eighth, ninth, tenth, eleventh, and seventeenth, which they say in part present the same legal question and will be briefed together; then follow all those assignments separately written under the so-called third assignment. If they all together present, as stated, the same legal question, it would have been much better to have presented such in one proposition, or for that matter in several, but not as here in both the so-called second and third assignments restate each one of these grouped, and follow each with so many separate general so-called propositions. Each of these assignments is complaining of the supposed error in each ruling, and refers us in each assignment by saying "is more fully shown by defendant's bill of exception No. ——." We find no merit in any of them, and they are overruled.

As already stated, the two companies, the one holding the title to the land and the other the water rights, entered upon mutual binding contracts whereby the one company leased the land to appellee, and the canal company was to furnish the water. At that time some of the laterals were not built, but in addition to the lease contract for the use of the land, appellee and canal company had the further agreement made contemporaneously, that it would furnish the water to appellee, and appellee would pay the regular water charges, and the necessary laterals would be constructed to it for the water. The appellee put the land in shape for cultivation. The cause of the failure to get water in time was because the laterals appellants were to build to connect with the one appellee was to, and did, construct to connect with his, which was to be done by February 1, 1919, were not completed until the cotton had come up and died for the lack of moisture which caused appellees' loss. When the water was first put in the lateral, it broke, and was not completed until April 8th, after appellee had lost his crop.

We do not believe that it was necessary to plead or prove negligence any more specifically than it is pleaded. The parties contracted to, and they were required to perform, their obligation as set out, alleged, and proven. However, the issue of negligence was submitted to the jury in the form requested by appellants, and the jury found against them. The contract objected to in

the assignment as not being admissible was the contract entered into between the parties and sued upon, and, being signed by one of the parties, was clearly admissible against such, and besides this, it was admissible for the jury to pass upon the question as to whether or not the canal company had ratified it. The issue submitted to the jury and complained of is:

"Question No. 1. Did the defendant Rio Grande Canal Company agree to, accept, or ratify the contract between the plaintiff and the defendant Fresnos Land & Irrigation Company, and agree to furnish water in accordance with its terms? Answer, Yes."

The question was a proper one and the answer of the jury concluded appellants from denying the execution of the contract. The finding is supported by the evidence. The canal company also pleaded over against appellee—recovered a judgment against him at the rate of $4 per acre, and in the aggregate the sum of $128. It is provided in the face of the contract that appellee Box was to pay it its regular charges for furnishing water to irrigate his lands.

[2] The fifth assignment of error is too general to understand or consider. It complains that the court erred in allowing counsel to interrogate witnesses Pedro Cortez, Pedro Zavalette, and A. N. Tandy on cross-examination; they testifying in behalf of the irrigation company in regard to the cause of action against A. N. Tandy on issues and along lines in no manner pertaining to the issues between plaintiff E. D. Box and appellants more fully shown by bill of exception No. 13. There is no statement showing what is contained in that bill. If there was any error, it is not set out in any statement. The introduction of testimony, at any rate, is a matter largely within the discretion of the court, and there is nothing to show any harm done by the examination of the witnesses, or any abuse of discretion upon the part of the court, and this assignment is overruled.

We overrule the sixth assignment of error.

The appellee was the plaintiff in the trial court. The burden was on him to establish his case, and it was his duty to produce his evidence, and was entitled to the conclusion thereof.

[3] The seventh assignment complains that the court erred in not giving the special issue to the jury as to what caused the breaks in the canal constructed by the defendant Tandy, as is more fully shown by bill of exception No. 19. The appellee strenuously objects to its consideration. There is no proposition or statement whatever showing what the special issue was that the court was requested to submit. In fact there is nowhere in the record any special charge whatever requested by appellants to be given the jury for the submission of any issue

for them to pass on, except for a directed verdict. It was the duty of appellant to prepare and submit such issues thought material to his case. This was due to the court and to the parties. It was the proper way to secure the submission of issues desirable. This would give the court the opportunity to present one of his own if such issue was material to aid in the determination of the case if not satisfied with the one offered by counsel.

Appellants' eighth, ninth, and tenth assignments of error, which appellants state do not appear in the record as assignments of error, nor covered by bills of exception, are submitted as fundamental errors. Appellee makes no reply to them. The assignments and propositions themselves do not comply with the rules, and submit no sufficient statements.

Through the first so-called assignment, proposition and alleged statement it is contended that Fresnos Company was liable only for negligent breach, and second that there was no allegation of joint liability of appellants, and it was error to credit $128, the judgment in favor of canal company, on the judgment in favor of appellee against appellants for $906. The evidence in this case shows that J. B. Scott was the president of both appellant companies, one engaged in operating and leasing irrigated lands and the other engaged in furnishing water to the tenants and water-takers, cultivating such lands. Appellee leased a tract of land which adjoined the Tandy tract, through and over which it was agreed appellants would construct a lateral to transport the water to the leased land of appellee to connect with laterals to be prepared by appellee over his leased lands to receive and distribute the waters. Scott, the president of both companies, contracted with Tandy to construct the lateral for the purpose of conducting the waters to appellee's lands.

[4] We do not think the clause in the contract in which it undertakes to exempt appellant water company by the "act of God or public enemy, the breaking down of machinery or appliances, * * * laterals," etc., applies, because that part of the contract was in reference to the existing and completed water plant, and not to a lateral subsequently imperfectly completed under the contract in this case. After appellee completed the laterals he was to complete on his land, he testified:

"Well, they went ahead about the 8th of April and completed this lateral across here, and the first day they pumped after they got it built, why, I turned water in here, and it came on down through the company's canal all right and into Mr. Tandy's, and got out here about 150 yards in Mr. Tandy's lateral, and there was a high place in there, and he hadn't built up his borders high enough; consequently, when this water come here, the canal back there was full

and ran over and washed it all out, and before I could get back up there and cut off the water, why, it ran out quite a bit of water, in other words, flooded the country. The water did not come down on my land over 150 yards; I immediately called up Mr. Scott and told him what had happened. 'Why,' he says, 'I didn't expect anything better. I saw that lateral and knew it wouldn't hold water; I didn't expect anything better.' So Mr. Scott told me while I was talking to him over the telephone to tell Mr. Tandy about it; I went on down to Olmito, and saw Mr. Tandy's son down there, Mr. Dave Tandy, and I told him about it. He made no reply, whether he would fix it or not. I notified Mr. Scott of this situation." ·

It is too clear that both appellants in this case undertook to perform a joint obligation. It was their duty to complete a sufficient system of laterals in the first place. They knew it had not been done here. And the jury has found that it was appellants' negligence that caused the damages. We can see no harm done in the joint judgment. The appellants must adjust that matter between themselves.

We have considered all the assignments so far as we can see the questions presented in the manner and form in which the assignments are submitted and discussed. We do not think there is any reversible error assigned or presented, and they are each overruled.

The judgment is affirmed.