**BROADWAY et al. v. MILLER.   (No. 1899.)***

(Court of Civil Appeals of Texas.  El Paso. Oct. 28, 1926.  Rehearing Denied Dec. 2, 1926.)

1. **Trial ⊙362—Court cannot substitute its findings for jury's findings.**

Judgment must conform to verdict; trial court having no power, on points submitted to jury, to substitute its own findings for those of the jury.

2. **Principal and agent ⊙10(1)—Statements of one securing power of attorney to recover land to grantor as to latter's interest and its value held mere opinions.**

Statements of one securing power of attorney to recover interest in land, conveying to him an interest therein for such services, as to grantor's interest and as to its value, *held* mere expressions of opinion, in view of lack of assumption of special knowledge.

3. **Trial ⊙141—Issue is matter of law, where evidence is uncontradicted as to matter which would bar action or other matter.**

Where uncontradicted evidence establishes a sufficiently pleaded material fact or facts which would bar cause of action, issue is a matter of law for the court; controverted issues only being for jury.

4. **Principal and agent ⊙175(1)—Ratification of power of attorney eliminates issues of fraud in procuring it.**

Ratification of power of attorney eliminates issues of fraud in procurement of it, so that special findings of jury thereon become immaterial.

5. **Appeal and error ⊙218(2)—Objection to court's findings as to ratification of power of attorney is not open to appellants, who did not request submission of issue to jury.**

Appellants, not requesting submission of issue of ratification of power of attorney to jury, are not in position to object to court's findings.

**6. Appeal and error ☞1070(2)—Findings of trial court on issue of ratification, notwithstanding jury's answers to other special issues submitted, are immaterial, where ratification appears from undisputed evidence as matter of law.**

Where, as matter of law, it appears on undisputed evidence that power of attorney was ratified, findings of trial court on issue of ratification, notwithstanding jury's answers to other special issues submitted, are immaterial and unnecessary to entry of proper judgment in trial court or on appeal.

**7. Principal and agent ☞173(3)—Evidence other than attorney's testimony held to show ratification of power of attorney.**

In action to cancel power of attorney, judgment for defendant, based on ratification of power, *held* not erroneous on ground that essential evidence to establish ratification was own testimony of the attorney; such being unsustained.

**8. Champerty and maintenance ☞5(1)—Barratrous contracts are illegal.**

Barratrous contracts are illegal and unenforceable.

**9. Champerty and maintenance ☞5(6)—Solicited power, authorizing attorney at law to recover lands, and, for such services, conveying to him an interest therein, held not barratrous or illegal (Pen. Code 1911, art. 421).**

Solicited power, authorizing attorney at law to recover any right, title, and interest to which grantors might be entitled in lands in counties stated, and, in consideration of services of attorney, conveying to him an undivided two-thirds interest, *held* not violation of Pen. Code 1911, art. 421, providing that any attorney seeking to obtain employment by personal solicitation shall be guilty of barratry, so that power was not barratrous and illegal.

**10. Trial ☞350(4)—In action to cancel power of attorney to recover land, for misrepresentations as to its value, etc., submitting issues whether attorney stated he had not visited and did not know value of land was not error.**

In action to cancel power of attorney to recover land and, for such services, conveying interest therein, on ground of fraudulent representation as to its value, etc., submitting special issues whether attorney stated that he had not visited and did not know value of land was not error, since such fact would make his statement of value mere expression of opinion.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit to cancel a power of attorney, coupled with interest by J. H. Broadway and another against E. J. Miller, in which others joined as parties plaintiff. Judgment for defendant, and plaintiffs appeal. Affirmed.

See, also, 261 S. W. 223.

Conner & McRae and G. G. Hazel, all of Eastland, and J. H. Grant, of Oklahoma City, Okl., for appellants.

Jenkins, Miller & Harris, of Brownwood, and Burkett, Orr & McCarty, of Eastland, for appellee.

WALTHALL, J. This suit was originally brought by J. H. Broadway and his wife, C. V. Broadway, against E. J. Miller, in which they seek to cancel a power of attorney coupled with an interest in 100 acres of land, commonly known as the B. F. Eakin tract in the Pioneer oil field, in Eastland county. By an amended petition, upon which the case went to trial, a number of other persons, parties at interest in the land involved, whose names we need not state, joined in the suit as parties plaintiff.

The record discloses, without controversy in the facts, that on the 28th day of June, 1922, Miller, an attorney at law living in Brown county, approached the Broadways, living in Lampasas county, for the purpose of securing from them the power of attorney herein sought to be canceled, and that, at the solicitation of Miller, the Broadways, for the consideration stated, executed the power of attorney thereby appointing Miller their attorney in fact to recover for them any and all right, title, and interest they may be entitled to in any lands in the counties stated, including Eastland county, where the land here involved is situated, and authorizing Miller to sue for, recover, sell, convey, or compromise, as he may deem best, any such right, title, or interest the Broadways may have in and to such lands; and for and in consideration of his services in locating, recovering, and disposing of said lands the Broadways, by the terms of the power of attorney, conveyed to Miller an undivided two-thirds interest in such lands, estate, and property. The power of attorney is properly acknowledged, and was duly recorded in Eastland county on July 3, 1922.

On September 5, 1922, the Broadways duly ratified and adopted an oil and gas lease theretofore executed by the other plaintiffs herein, covering the lands herein involved and affected by the said power of attorney. At the time of the execution of the power of attorney by the Broadways to Miller, the Broadways owned an undivided one thirty-sixth interest in the B. F. Eakin estate, including the land here involved. Said land had become valuable by reason of the oil development on and near said land. The Broadways were illiterate people, and at the time of the execution of the power of attorney were ignorant of the fact that they owned the above-stated interest in said land, the right to which they had unknowingly acquired through the death of one of their daughters, Iva Broadway Eakin, at the time of her death, she being the widow of Mack Eakin, a deceased son of B. F. Eakin, and

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(288 S.W.)

which son was an heir of his deceased mother, the wife of B. F. Eakin.

As ground for canceling and setting aside the said power of attorney, the Broadways and other plaintiffs allege, in substance, that said power of attorney was procured through the fraudulent acts and representations of Miller, in that Miller, at the time of the execution of the power of attorney, represented to the Broadways that, if they owned an interest in the B. F. Eakin estate, it was of small and inconsiderable value; that he knowingly concealed from them the value of the B. F. Eakin estate, and the interest owned by the Broadways in said estate; that such representations and concealments were falsely and fraudulently made; that they were material inducements in the execution of the power of attorney by the Broadways; that the Broadways were ignorant of the falsity of such statements, and ignorant of the existence of the facts concealed and withheld from them; that the representations and concealments were made to induce the execution of the power of attorney; that the Broadways acted upon the representations and concealments in the execution of the power of attorney; and that injury resulted to them by reason thereof.

Further, in bar to Miller's right to any interest secured to him by reason of the power of attorney, plaintiffs, and as additional reason for setting aside the power of attorney, allege, in substance, that at the time of the execution of the power of attorney Miller was a practicing and licensed lawyer, and that it was unlawful for Miller to solicit the representation as an attorney to a lawsuit then in existence or in prospect, and that any contract of employment or compensation paid or contracted to be paid for the service of an attorney enlisted under such circumstances would be barratry, and for that reason void and of no legal force or effect; that Miller, without any request from either of the Broadways, offered his services to the Broadways as an attorney, and urged upon them that his services be accepted, and that, as a result of such solicitation, the Broadways executed the power of attorney.

Miller answered by general demurrer and special exceptions directed at the plaintiff's allegations of fraud and concealment in securing the power of attorney, and the allegations relating to barratry; denied generally and specially certain specific allegations of the petition which we need not more fully state. Miller alleged certain acts on the part of the Broadways and certain transactions between the Broadways and himself, which he alleges, the Broadways then being fully advised of all the facts and their rights in the premises, constitute a ratification by the Broadways of the power of attorney, and an estoppel against their rescinding the contract and setting aside the power of attorney as was sought to be done.

Miller set up an instrument executed by the Broadways of date September 6, 1922, by the terms of which they ratified and confirmed certain oil leases granted by B. F. Eakin and others, plaintiffs herein, covering the land in question, and thereby had released all interest in said land except a royalty interest of one thirty-sixth of one-eighth of all oil, gas, and other minerals in said land, and alleged that the Broadways thereby had no interest in said land except said royalty interest. Miller thereupon disclaimed as to any interest in and to the said royalty interest of the Broadways, to which he alleged the Broadways' interest was limited, and alleged in himself, under the power of attorney, an undivided two-thirds of one thirty-sixth of seven-eighths interest of all of the oil, gas, and other minerals produced and to be produced from the land involved, and alleged that, by reason of said lease ratification by the Broadways and his disclaimer, there was nothing in controversy between the Broadways and himself.

Before the argument and submission of the cause to the jury, plaintiffs requested an instructed verdict in their favor, and, should same be refused, they requested a submitted charge on barratry. Both charges were refused, and plaintiffs excepted.

The case was submitted to a jury upon special issues. Upon the issues submitted, the jury answered:

1. On the occasion of his visit to the plaintiffs Broadways, before procuring the power of attorney herein sought to be canceled, Miller represented to the plaintiffs Broadways that, if they owned an interest in the B. F. Eakin estate, it would be difficult and expensive to recover.

2. On the occasion when he procured the power of attorney from the plaintiffs Broadways, Miller represented to them that, if they owned an interest in the B. F. Eakin estate it was of small and inconsiderable value.

3. On the occasion when he procured the power of attorney from the plaintiffs Broadways, Miller knowingly concealed from them the value of the B. F. Eakin estate.

4. On the occasion when he procured the power of atttorney from the plaintiffs Broadways, Miller knowingly concealed from them the interest owned by plaintiffs Broadways therein.

5. (a) Such representations or concealments were falsely or fraudulently made. (a1) Such false representations and concealments were material inducements in the execution of the power of attorney by the plaintiffs Broadways herein. (b) Broadway and wife were ignorant of the falsity of such statements and believed same to be true. (c) Broadway and wife were ignorant of the existence of any facts concealed and withheld from them. (d) Such false representations and concealments were intended by Miller to induce the Broadways to execute said power of attor-

ney. (e) Broadway and wife acted upon such false representations and concealments, made by Miller, in the execution of the power of attorney. (f) Injury resulted to the Broadways by reason of their acting upon the representations and concealments made by Miller in the execution of the power of attorney.

The jury made the following additional answers to questions submitted at the request of Miller:

1. At the time or just prior to the execution of the power of attorney, Miller told the Broadways that, if the Eakin land was the community property of Mack Eakin and his deceased wife, they (the Broadways) were entitled to one thirty-sixth interest therein.

2. At the time or just prior to the execution of the power of attorney, Miller told the Broadways that he had never visited the Pioneer oil fields and that he did not know the value of the Eakin land.

3. At the time or just prior to the execution of said power of attorney, Miller told the Broadways that he had heard that the Slick-Eakin well No. 4 was the largest producing well in the Pioneer field, and that the Eakin land was valuable on account of the oil production on the surrounding land, and also on account of the fact that there were producing oil wells on said Eakin land.

4. At the time or just before the execution of the power of attorney, plaintiff Mrs. Q. V. Broadway told Miller that she had read in a paper that the Slick-Eakin well No. 4 was the best well in the Pioneer oil field, and was producing 10.000 barrels of oil, meaning thereby that it was producing 10,000 barrels of oil per day.

5. At the time or before the execution of the power of attorney, the plaintiff Mrs. Q. V. Broadway read in a paper that the Slick-Eakin well No. 4 was the best well in the Pioneer oil field, and that it was producing 10,000 barrels of oil, meaning thereby that it was producing 10,000 barrels of oil per day.

The jury returned its findings into court on June 12, 1925. Plaintiffs and defendant each duly excepted to the general charge and issues submitted to the jury.

On June 13, 1925, at the request of defendant, Miller, the trial court made and filed the following findings of fact on the issue of ratification pleaded, and upon which evidence was offered but had not been submitted to the jury. While we think it immaterial that the trial court made findings of fact on the issue, in view of appellants' several assignments, we have concluded to state them:

"First. That the defendant in good faith and with diligence, after securing the power of attorney involved in this suit, for about seven weeks tried to get settlement of the interest of the plaintiffs with the owner and operators of oil leases on the Eakin land but was unable to secure an adjustment or settlement.

"Second. That on August 21, 1922, the defendant herein filed two suits in the district court of Eastland county, Tex., one against T. B. Slick and the other against F. W. Stone et al., lessees of said land, seeking to recover the interest of the plaintiffs in the oil that had been produced and was being produced from said Eakin land, that said suits are still pending, are contested, and undisposed of, awaiting the result of this suit.

"Third. That the defendant at all times during said seven weeks kept the plaintiffs advised as to his activity on their behalf in the matters covered by findings Nos. 1 and 2 above.

"Fourth. I find that, in addition to the services rendered by himself personally, and the expense incident thereto, defendant has employed attorneys at Eastland, Tex., to wit, Burkett, Orr & McCarty, to assist him in the prosecution of the aforesaid two suits.

"Fifth. That on July 8th, 1922, the defendant went to see the plaintiffs at their home, after having investigated their rights and the value of the Eakin estate, and after having written them on July 3d as to same, and then and there advised them fully as to their rights and the probable value of their interest in said Eakin estate, at which time the plaintiffs consented for him to proceed with the recovery and adjustment of their rights under said power of attorney.

"Sixth. That on July 20, 1922, the plaintiffs Broadways, after having visited the Eakin Oil Lands at Pioneer, and after visiting the officers of the oil lease operators at Cross Plains, in company with B. F. Eakin and R. W. Hodnett, and having been offered settlement on the basis of one thirty-sixth of the one-eighth royalty, said plaintiffs visited the offices of the defendant in Brownwood, Tex., and, after fully discussing the matter with the defendant, declined to accept said offer of settlement, and expressed a willingness for the defendant to proceed in the matter of recovering and settling their interest in said oil lands and estate, and at the same time negotiated a loan of $100 from the defendant, and agreed that the same should be repaid out of whatever amount defendant might recover for them under the power of attorney in question.

"Seventh. That the plaintiffs Broadways, on August 1, 1922, after having consulted with Hart & Harrel, attorneys for the oil lease operators at Cross Plains, and after having consulted Judge W. B. Abney at Lampasas as to their rights, they were advised by the defendant that he and Judge Abney had formulated and submitted to the oil lease operators a proposition of settlement, and that, if same was not accepted within a few days, he would proceed to bring suits against the said oil lease operators to enforce settlement of their interest, and that on that occasion the said plaintiffs offered no objection to the defendant's proceeding as indicated.

"Eighth. That on August 7, 1922, the plaintiffs Broadway wrote the defendant, expressing the hope that he would soon get a settlement with the oil lease operators, and requesting a further loan of $100, which would be repaid out of whatever the defendant recovered for them under said power of attorney, and thereafter accepted the $100 requested, and the defendant did proceed with his efforts.

"Ninth. That on August 15, 1922, the plaintiff J. H. Broadway saw the defendant at the

(288 S.W.)

office of B. W. Abney at Lampasas, Tex., at which time, after discussing some propositions of settlement, the defendant advised the said plaintiff that, if the oil lease operators did not accept a proposition of settlement that had been made by the end of that week he would proceed to file suits to enforce settlement of his rights, and the plaintiff then and there assented to the same.

"Tenth. That on August 18th defendant advised the plaintiffs that he would wait no longer for settlement, but would proceed to file suits, and on the 22d of August wrote plaintiffs he had filed suits to enforce and recover their rights. That both of said letters were received by the said plaintiffs, and they made no character of objection to the defendant's so proceeding.

"Eleventh. That the plaintiffs Broadways, at no time prior to the filing of this suit and the service of process upon the defendant about September 11, 1922, in any way advised or intimated to the defendant any purpose or intention to repudiate said power of attorney or any desire or disposition to have him cease his efforts thereunder.

"Twelfth. That the defendant conveyed to the plaintiffs Broadways, on June 28, 1922, the first knowledge they had of owning an interest in the Eakin estate and oil lands, and that, after that the defendant secured the proof of heirship and power of attorney and filed same and gave notice of their rights to the pipe line companies and the oil lease operators, the latter and their lessors first begun negotiations with the plaintiffs, and as a result of which said plaintiffs have received some $3,500."

Defendant thereupon filed a motion for judgment in his favor.

On July 20, 1925, plaintiffs moved the court to enter judgment in their favor, based on the facts and findings of the jury.

On July 30, 1925, the court entered judgment in favor of defendant Miller, reciting in the judgment that, under the fact findings filed by the court, and the undisputed evidence, the plaintiffs Broadway must be held to have ratified the contract and power of attorney herein attacked, to have waived the fraud, if any, in procuring the same, and are now estopped to have rescission of the power of attorney, and that the other plaintiffs are bound thereby, and entered judgment that plaintiffs take nothing of their suit.

Opinion.

Appellants present some fifty propositions assigning error, but, as we view them, we need discuss but comparatively few of them. Under several propositions appellants insist that the judgment of the trial court should have conformed to the findings of the jury; that the court had no power to enter judgment contrary to the jury's findings and based upon facts other than those found by the jury, though said other facts had been fully pleaded and indisputably proved.

As stated in the court's judgment, the court was of the opinion that, under the fact, but not submitted to the jury, on appellee's plea certain acts and conduct of the Broadways constitute a ratification of the contract and power of attorney, and an estoppel against their cancellation of the contract and power of attorney. The Broadways, in the judgment of the court, were held to have ratified the contract and power of attorney, and thereby had waived the fraud, if any, in procuring same and are now estopped to have rescission of same, and that the other plaintiffs are bound thereby.

[1] It is definitely settled that the judgment of the trial court must be entered in conformity with the verdict, whether the verdict be correct or not; the court under the statute being without authority to enter judgment non obstante veredicto. Heimer v. Yates (Tex. Com. App.) 210 S. W. 680, and cases cited. We understand the holding to be that the trial court cannot substitute its own finding upon points submitted to the jury, contradictory to the jury's findings. The court here made no change of the jury's findings, nor any issue submitted to the jury, but held, in effect, that, notwithstanding the fraudulent representations and concealments, the Broadways had ratified the power of attorney.

[2] An analysis of the jury's findings on the issues submitted to them shows that it is most doubtful as to what the jury really meant to find as to the issues of fraudulent representations and concealments. While the jury found that Miller told the Broadways that, if they owned an interest in the Eakin estate, it would be difficult and expensive to recover it, that their interest, if any, was of small and inconsiderable value, and that he knowingly concealed from them the value of the estate, and concealed from them the interest they owned in the estate, and that such representations and concealments were "falsely or fraudulently made," the jury also found that the Broadways were ignorant of the falsity of such statements, and believed them to be true, and that the Broadways were ignorant of the existence of any of the facts concealed from them.

At the same time the jury found that Miller told the Broadways that, if the Eakin land was the community property of Eakin and his deceased wife, the Broadways were entitled to one thirty-sixth interest. He told them he had never visited the Pioneer oil field, and did not know the value of the land; that he had heard that the Slick-Eakin well No. 4 was the largest producing well in the Pioneer oil field, and that the Eakin land was valuable on account of the oil production on surrounding lands and on the Eakin land; that Mrs. Broadway had read in a paper that the Slick-Eakin well No. 4 was the best well in the Pioneer oil field, and was producing 10,000 barrels of oil per day.

Later, the parties at interest in the land,

and the Broadways themselves, admitted a one thirty-sixth interest in the land to be in the Broadways; if Miller told the Broadways he had not visited the oil field and did not know the value of the land, but did tell them of the producing wells in the vicinity of the land and on the land, and the Broadways had read of it in the paper, it is difficult to see how they could be deceived by what Miller said or concealed from them as to their interest in the land and its value.

Had Miller assumed to have knowledge of the interest the Broadways had in the land, and had assumed to have special knowledge of the value of the land, and the Broadways were ignorant of such value and relied entirely on the good faith of Miller, Miller's statement as to the Broadways' interest in the land, and his statement as to the value of the land would, in that event, amount to statements of fact. But the jury found that Miller's statement of interest was contingent, and that he had not visited the Pioneer oil field, and did not know the value of the land. His statements were mere expressions of opinion. Tips v. Barneburg et al. (Tex. Civ. App.) 276 S. W. 932, and cases cited. His statements we think were more statements of opinion than facts.

[3] But, aside from the above observation on the jury's findings, we are not prepared to concur in the propositions presented.

Here the issue of the ratification by the Broadways of the contract and power of attorney was raised by the pleading of appellee. The issue was not a part of appellants' cause of action, nor the appellee's denial of any part thereof, but, in effect, a plea that, notwithstanding the truth of the appellants' allegations, the appellants are not entitled to recover by reason of the fact of the ratification occurring subsequent to the accrual of the alleged cause of action, and which, if shown, would render the facts alleged by appellants' petition and any facts based thereon, immaterial. The plea is in bar of the cause of action; it was not submitted to the jury, nor requested to be submitted to the jury, is sustained, as it seems to us, by the uncontradicted evidence. If the matters pleaded by appellee as constituting the defense of ratification were material and legally sufficient, if proved, to bar appellants' cause of action, we think it follows that the issues thus tendered and proved ought to be decided by some one; if not by the jury, then by the court. Again, where the uncontradicted evidence establishes a sufficiently pleaded material fact or facts, sufficient to show as a bar to a cause of action, the issue thus pleaded and proved by the uncontroverted evidence, becomes a matter of law for the court, and ought not to be submitted to the jury. It is only controverted issues of fact that should be submitted to the jury.

[4] The special findings of the jury on the issues of fraudulent representations and concealments become immaterial, since the fact of ratification legally eliminated the issues embodied in such special findings by the jury of fraud in the procurement of the power of attorney. Dalton Adding Machine Sales Co. v. Wicks & Co. (Tex. Civ. App.) 283 S. W. 642; Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672.

[5] If the issue of ratification was controverted by any evidence, appellants did not at any time in writing, or otherwise, so far as the record shows, request the submission to the jury of the issue of ratification by the Broadways of the power of attorney, and we think are not now in a position to object to the trial court's findings or the judgment based on the undisputed evidence on the issue of ratification. Prescott-P. Oil & Gas Co. v. Gilliland (Tex. Civ. App.) 241 S. W. 775; Fresnos L. & I. Co. v. Box (Tex. Civ. App.) 233 S. W. 369; Southwestern Portland Cement Co. v. Challen (Tex. Civ. App.) 200 S. W. 213.

[6] However that may be, we have carefully reviewed the evidence, and, without stating it here, are of the opinion that the evidence, on the material facts on the issue of ratification, are undisputed. In the condition of the evidence, the findings of the trial court on the issue of ratification were immaterial, were not necessary to the rendition of the judgment, nor to the judgment to be rendered in this court, since it appears as a matter of law from the undisputed evidence that ratification of the power of attorney has been established. Heimer v. Yates, supra, in which the issue of estoppel was not submitted to the jury nor found by the trial court to be established by the evidence. Hennie & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607; Dalton Adding Machine Sales Co. v. Wicks & Co., supra, in which it is said that:

"The special findings of the jury on fraud become immaterial, since the special findings by the court of waiver legally eliminated the issue embodied in such special findings of the jury. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672. Therefore, as a matter of law, appearing on the face of the record, the court's findings on a matter pleaded required a judgment to be entered for the appellant, and it was error not to do so."

Now such would not be the rule on the appellants' branch of the case, on the issues submitted to and found by the jury, since the statute requires the trial court to enter judgment in conformity with the verdict of the jury whether the verdict be correct or not. Heimer v. Yates, supra. But, where the issues submitted to and found by the jury become immaterial by reason of some subsequent acts or conduct of the complaining party, such as a waiver, ratification, or estoppel, and where such defensive matter is

conclusively established, it becomes a matter of law, and controls the judgment both of the trial court and this court. Liverpool & London & Globe Insurance Co. v. Cabler (Tex. Civ. App.) 271 S. W. 441; American Surety Co. v. Hill Co. (Tex. Civ. App.), 254 S. W. 241; Lasater v. Lopez (Tex. Civ. App.) 202 S. W. 1039.

[7] Appellants insist that the essential evidence upon which appellee relies to establish ratification of the power of attorney is his own testimony. We do not so regard it. It is unquestioned that the power of attorney was executed on June 28, 1922. Broadway and wife both testified that, shortly after the execution of the power of attorney, Broadway said probably within a week they both went to see the land in question. They went over the land, saw the oil wells on the place. Broadway said he counted the wells, knew whether they were producing oil, said, "They was producing oil; I could see that; I saw them running oil." They both testified that they both then visited the offices of the oil lease operators at Cross Plains. Broadway testified they were there offered a settlement of their interest. They both testified they then went to Brownwood to see Miller. Broadway said:

"I went over there to try to get him (Miller) to give me back half of what he was taking and go on and collect for me without any lawsuit. I told him I thought he was taking more off me than he ought, to give me back half of it."

Broadway testified that, while at Brownwood, Miller told him what he had done and was then doing to effect a settlement with the other parties at interest. Broadway testified that, while at Brownwood, and after they had failed to have Miller take a less amount, he told Miller of efforts of some of the appellants and others to buy their interest and to pay him the money then for his interest; that he needed the money; that Miller said to him:

That, if he needed any money, "he would loan me the money, and he did loan me $100, and I did sign a note to be paid out of what he (Miller) recovered in the transaction. * * * I told him if he could settle it without a lawsuit to go ahead and settle it, to go ahead and do it, at that time. * * * I did tell him, after all this conversation, and after getting this $100, to go ahead and settle if he could do so without a lawsuit. That is the way I put it; I told him that all the time."

Both the Broadways testified to getting the $100 from Miller while at Brownwood, and Broadway testified to getting another $100 from Miller at a later time on his request and statement to Miller that he needed the money. Mrs. Broadway was present and took part in the conversation as to borrowing the money from Miller and as to how much they wanted, and, after Broadway had suggested $200 or $300, she then said, "We don't need that much; if we had $100 now it would do."

Now, as shown by the evidence of the Broadways themselves, after full knowledge of the interest they had in the land and its value and effort on their part to effect a settlement with opposing claimants, they go to Miller, not to ask a rescission of the power of attorney, but a reduction of the amount Miller is to receive, and, failing to agree on a reduction, they borrow money of Miller on the faith of the power of attorney and to be returned out of money collected by Miller, acting for them, under the power of attorney, and they then instruct Miller to proceed under the power of attorney, acts, it seems to us, with full knowledge and unequivocal in its character. In the matters stated, the Broadways and Miller were dealing directly with the subject-matter of the power of attorney.

[8, 9] Appellants insist that the facts show barratry in procuring the power of attorney sought to be canceled, and that it was error to disregard such facts and render judgment validating the power of attorney. The facts have been fully shown in stating the several findings of fact.

Article 421 of our Penal Code 1911, defining barratry, is an exactly framed statute, accurately defining that offense. The article is lengthy and embraces several groups of facts, each group within itself and independent of every other group, constitutes the offense of barratry sought to be prescribed by the act. The article of the statute is lengthy, and we quote only the group of facts which seem more nearly than any other to embrace the facts pleaded and relied upon by appellants.

"If any attorney at law shall seek or obtain employment in any suit or case at law, or in equity, to prosecute or defend the same by means of personal solicitation of such employment, * *. * shall be deemed guilty of barratry," and punished as prescribed, that is, "shall, in addition to the penalty hereinbefore provided, forfeit his right to practice law in this state, and shall be subject to have his license revoked and be disbarred in the manner provided by law for dishonorable conduct or malpractice, whether he has been convicted for violating this law or not."

Appellants insist that the facts alleged and proved are inhibited by the act defining barratry, and for that reason the power of attorney is void, nonenforceable, and should be canceled and held for naught, and assign error on the trial court's rendering judgment validating the power of attorney.

It seems clear that barratrous contracts are illegal and unenforceable. Without entering into a discussion of the question presented, we think it is ruled by the case of Thompson & Tucker Lumber Co. v. Platt

(Tex Civ. App.) 154 S. W. 268, in which it is held that a power of attorney, authorizing an attorney to sue for and recover land at his own expense, receiving for his services an undivided one-half of the land was not a violation of our barratry law, providing that, if any attorney shall seek to obtain employment in any suit or case at law or in equity, etc., he shall be deemed guilty of barratry. The Supreme Court refused a writ of error.

[10] It was not error to submit to the jury special issues as to whether Miller, at the time of the making of the power of attorney, told the Broadways that he had never visited the Pioneer oil field and did not know the value of the Eakin land. One of the alleged fraudulent representations relied upon to cancel the power of attorney is that Miller represented to Broadway and wife that the Eakin tract of land "was of insignificant and inconsiderable value."

If Miller told the Broadways that he had never visited the Pioneer oil field and had ·no knowledge of the value of the land, nor of the Broadway interest therein, his statement as to value, as alleged, we think, would not be a statement of a fact, but a mere expression of opinion, and could not be the foundation of a fraudulent representation as to value where there was no trust relation existing between them. Tips v. Barneburg (Tex. Civ. App.) 276 S. W. 932.

What is said above is sufficient answer to objections to other special issues submitted. The issues submitted strike directly at the several elements material to constitute the fraudulent acts charged.

We have perhaps made a fuller statement of the case than was necessary. We have not discussed separately each of the many propositions presented, but have endeavored to express our view on the controlling questions involved. We have considered separately each of the propositions and those not discussed, we think, are without merit and are overruled.

Finding no reversible error, the case is affirmed.

## On Motion for Rehearing.

Our attention is called by appellee to an error in our statement of the fourth finding made by the jury submitted by the trial court in the general charge.

In our opinion we inadvertently said the jury found that Miller, in procuring the power of attorney, knowingly concealed from the Broadways the interest they owned in the Eakin estate, and later referred to that erroneous statement. The jury found directly the opposite; that is, that Miller did not knowingly conceal from the Broadways their interest in the Eakin estate.

With the above correction, the motion for rehearing is overruled.